[No. AO16686. First Dist., Div. Three. Jan. 10, 1983.]

RESOURCE DEFENSE FUND, Plaintiff and Appellant, v.
LOCAL AGENCY FORMATION COMMISSION OF SANTA CRUZ
COUNTY, Defendant and Respondent.

**COUNSEL**

Thomas N. Brown and Page & Coben for Plaintiff and Appellant.

Clair A. Carlson, County Counsel, and James M. Ritchey, Assistant County Counsel, for Defendant and Respondent.

## OPINION

**BARRY-DEAL, J.**—We hold that before a local agency formation commission (hereafter LAFCO)[1] may approve an annexation of territory to a local governmental agency, it must develop, determine, and adopt the spheres of influence of each local governmental agency which might include the subject territory in its sphere of influence.

### Statement of the Case

On May 20, 1981, petitioners, Resource Defense Fund, an environmental association (hereafter RDF), and individual members and taxpayers, filed a petition for writ of mandate and/or prohibition in Santa Cruz County Superior Court, seeking in their first cause of action to compel respondent LAFCO to adopt spheres of influence for each local governmental agency in the county and in their second cause of action to compel LAFCO to set aside its approval of a specific project known as the Sequoia Annexation.

On May 21, 1981, the trial court denied the petition as to the second cause of action. Petitioners then sought writ of mandate and/or prohibition as to the Sequoia Annexation in this court. (*Resource Defense Fund* v. *Santa Cruz County Local Agency Formation Com.*, 1 Civ. 52826.)[2] On May 27, 1981, we stayed all further proceedings related to the Sequoia Annexation pending our consideration of the petition. ■■ ■■ ■■ After briefing by all interested parties, we dissolved the stay and denied the petition, without opinion, on July 8, 1981.[3]

On July 16, 1981, the trial court issued an alternative writ of mandate as to the first cause of action. Following extensive briefing and argument, the court denied the petition on February 26, 1982. This appeal followed.

Other pertinent facts are developed in the discussion.

[1]Hereafter we shall refer to the Santa Cruz Local Agency Formation Commission, and to such commissions generally, as LAFCO. The meaning will be clear from the context. (See *City of Santa Cruz* v. *Local Agency Formation Com.* (1978) 76 Cal.App.3d 381, 386 [142 Cal.Rptr. 873].)

[2]We hereby take judicial notice of the records of this court in *Resource Defense Fund* v. *Santa Cruz County Local Agency Formation Com.*, 1 Civ. 52826. (Evid. Code, § 452, subd. (d)(1).)

[3]It is settled beyond question that denial of a writ in this matter does not constitute res judicata or law of the case and therefore does not bar a subsequent appeal raising the same issue(s). (*People* v. *Medina* (1972) 6 Cal.3d 484 [99 Cal.Rptr. 630, 492 P.2d 686]; *Rosato* v. *Superior Court* (1975) 51 Cal.App.3d 190, 230-231 [124 Cal.Rptr. 427]; cf. *Price* v. *Civil Service Com.* (1980) 26 Cal.3d 257, 267, fn. 5 [161 Cal.Rptr. 475, 604 P.2d 1365] [law of the case applies where court issued alternative writ and decided issue on the merits by written opinion].)

*Discussion*

This appeal presents a single legal issue of first impression: may a LAFCO consider and approve an annexation before it has established the relevant spheres of influence? Our analysis of the legislative scheme and of decisions which have interpreted it leads us to conclude that it may not and that the trial court therefore erred in denying the writ.[4]

LAFCO's as they exist today are the product of the Knox-Nisbet Act of 1965, the purposes of which include "the discouragement of urban sprawl," the "orderly formation and development of local governmental agencies," and the encouragement and planning of "well-ordered, efficient urban development patterns with appropriate consideration of preserving open-space lands within such patterns." (Gov. Code, §§ 54774, 54774.5.)[5] To these ends, each LAFCO has the power to establish "spheres of influence" (hereafter sometimes referred to as spheres) of each local governmental agency within its county and to approve or disapprove, inter alia, proposals for annexation of territory to local governmental agencies. (§§ 54774, 54790, subd. (a).)[6]

A "sphere of influence" is "a plan for the probable ultimate physical boundaries and service area of a local governmental agency." (§ 54774.)[7] The concept was codified by amendment to section 54774 in 1971. Prior to that time the statute provided that LAFCO "*may* initiate and make studies of existing governmental agencies . . . ," that these studies "*may* include . . ." determination of the agencies' service areas, and that "[i]f" such studies were made, LAFCO could seek relevant information from the cities and counties. (Stats. 1965, ch. 2045, § 9, pp. 4772-4773, italics added.)

---

[4]RDF informs us that the Sequoia Annexation was finalized, that construction pursuant thereto is nearing completion, and that the second cause of action in the original petition is therefore moot. RDF no longer seeks appellate relief as to that cause of action. This opinion therefore addresses only the first cause of action.

[5]All statutory citations are to the Government Code unless otherwise indicated.

[6]Section 54790 empowers LAFCO's to "review and approve or disapprove with or without amendment, wholly, partially, or conditionally proposals for" incorporation of cities, formation of special districts, annexation of territory to local agencies, exclusion of territory from a city, disincorporation of a city, consolidation of two or more cities, and development of new communities. The original petition sought an order restraining LAFCO from reviewing or approving "any proposals" before establishing spheres of influence. Although, for editorial convenience, our discussion is stated in terms of annexations only, it encompasses all proposals under section 54790.

[7]Section 54774 lists a number of factors which LAFCO must consider in determining a sphere of influence, including the maximum possible service area of the agency, projected future population growth of the area, type of development occurring or planned for the area, and the existence of agricultural preserves in the area.

In 1971, the Legislature substituted the word "shall" for the word "may" in the two sentences quoted above. It also substituted the phrase "In conducting such studies" for the previously existing phrase "If such studies are made." At the same time, the Legislature added to section 54774 the third and fourth paragraphs, which provide for spheres of influence as follows: "In order to carry out its purposes and responsibilities for planning and shaping the logical and orderly development and coordination of local governmental agencies so as to advantageously provide for the present and future needs of the county and its communities, the [LAFCO] *shall* develop and determine the sphere of influence of each local governmental agency within the county. . . . [¶] The commision *shall* periodically review and update the spheres of influence developed and determined by them. [¶] The spheres of influence *shall* be used by the commission as a basis for regular decisions on proposals over which it has jurisdiction. . . ." (Stats. 1971, ch. 1241, § 1, pp. 2408-2409, italics added.)

The last quoted sentence was modified in 1972 to read, "The spheres of influence, after adoption, *shall* be used by the commission as a factor in making regular decisions on proposals over which it has jurisdiction." (Stats. 1972, ch. 792, § 1.5, p. 1409, italics added.) LAFCO argues that the "after adoption" language indicates that adoption of the spheres is optional. We do not agree. We perceive the use of that language as evidence of the Legislature's recognition that the process of developing and determining the spheres (§ 54774, 3d par.) should be followed by a formal adoption of them. This view finds support in the 1979 amendment to section 54774, which deleted the former fourth paragraph ("The commission shall periodically review and update the spheres of influence developed and determined by them.") and added a new provision: "Upon determination of a sphere of influence, the commission shall adopt such sphere, and shall periodically review and update the adopted sphere." (Stats. 1979, ch. 892, § 1, p. 3086.) Furthermore, the 1972 amendment has been characterized by one commentator as a "nonsubstantive, clarifying" change. (*Selected 1972 California Legislation* (1973) 4 Pacific L.J. 621.)

In 1972 the Legislature also amended section 54796 to require that LAFCO consider any applicable sphere of influence in reviewing proposals: "Factors to be considered in the review of a proposal shall include but not be limited to: . . . [¶] (f) The 'sphere of influence' of any local agency which may be applicable to the proposal being reviewed." (Stats. 1972, ch. 792, § 3, p. 1411.) LAFCO argues that use of the word "may" implies that adoption of the spheres of influence is optional. This is incorrect. We view the language as recognizing the function and purpose of LAFCO, which is to give a regional perspective to proposals within its jurisdiction. (See *Bozung* v. *Local Agency Formation Com.* [hereafter *Bozung* v. *LAFCO*] (1975) 13 Cal.3d 263, 283 [118 Cal.Rptr. 249,

529 P.2d 1017].) Section 54796 mandates that in reviewing proposals LAFCO consider a number of regional factors such as the likelihood of growth and the adequacy of governmental services "in the area," and the effect of the proposal "on adjacent areas." (§ 54796, subds. (a), (b), (c).) Within this context it is clear that more than one local agency "may" be affected by a proposal and that the language in question ("which may be applicable") instructs LAFCO to consider each such local agency's sphere of influence.

The vital role of the spheres of influence was acknowledged by the Supreme Court in its *Bozung* decision. There the court recognized that the development of spheres of influence is one of the two ways in which a LAFCO accomplishes its objectives (the other being review of annexations of territory). (*Bozung* v. *LAFCO, supra,* 13 Cal.3d at pp. 273-274.) The court stated that although "[t]here is nothing final about a spheres of influence plan . . . ," it "is intended as *the basis* for LAFCO involvement in county development . . . ," citing the provision in section 54774 that the " 'spheres of influence, after adoption, *shall* be used by [LAFCO] as a factor in making regular decisions on proposals over which it has jurisdiction.' " (*Ibid.,* italics added.)

RDF's position also finds strong support in a 1977 opinion issued by the office of the Attorney General (60 Ops.Cal.Atty.Gen. 118 (1977).) One of the questions presented was, "At what point must a county [LAFCO] adopt spheres of influence for each local agency . . . ?" (*Ibid.*) The essence of the answer was: "Notwithstanding that spheres of influence have been mandatory there is no express legislative deadline for their adoption by LAFCO. LAFCO, however, must adopt spheres within a reasonable period of time. It is our view that the six years which have elapsed since addition of the sphere requirement exceed a reasonable time. The Legislature has declared that spheres shall be a factor in LAFCO decisions on proposals over which it has jurisdiction. Gov. Code, §§ 54774, 54796. Hence, spheres . . . like general plans, serve as an essential planning tool to combat urban sprawl and provide well-planned, efficient urban development patterns, giving appropriate consideration to preserving prime agricultural and other open-space lands. Gov. Code, §§ 54774.5, 54790.2." (60 Ops.Cal.Atty.Gen., *supra,* at p. 120, fns. omitted.)

We are convinced that the Attorney General's opinion is correct; nothing in LAFCO's argument to the contrary is convincing. LAFCO contends that the Legislature's failure to require consistency between proposals and spheres of influence implies that adoption of the latter is neither mandatory nor a prerequisite to consideration of the former. There is no logical basis for this contention. The statutes discussed above require LAFCO to "consider" the sphere of influence when reviewing proposals. Absence of a consistency requirement cannot in reason be viewed as negating this mandate. Furthermore, LAFCO

itself has recognized that adoption of spheres is mandatory. Its resolution 97-K, by which it adopted the "Santa Cruz Local Agency Formation Commission Spheres of Influence Policies and Guidelines" (hereafter Policies and Guidelines), is prefaced by the statement, "This Commission is required by Section 54774 of the Government Code to develop and determine spheres of influence . . . ." The document reviews pertinent legislation and states, "The purpose of a sphere of influence study is to provide the Commission information needed to determine an agency's sphere of influence and to make recommendations for local government reorganizations."

The Policies and Guidelines provide that LAFCO "will use spheres of influence to discourage ineffecient [*sic*] development patterns and to encourage the orderly expansion of local government agencies . . . ," and that spheres "will be used" for other purposes.

LAFCO's policy guideline No. 6 provides: "Once established, an agency's sphere of influence will be a primary guide to the Commission in its decisions on individual proposals affecting that agency. Before the Commission may approve a change of organization inconsistent with the adopted sphere of influence, the Commission shall amend the sphere of influence." Thus, the Santa Cruz LAFCO has gone farther than the Legislature and demands of itself consistency between its spheres of influence and adopted proposals.

In light of these provisions of its own Policies and Guidelines, LAFCO cannot seriously argue that adoption of spheres of influence is optional.[8] LAFCO argues that it is proceeding diligently in adopting spheres and that when its efforts and accomplishments are viewed in light of the circumstances, including its budget and the performance of other LAFCO's, it is apparent that it is acting in a "reasonable" manner. The trial court agreed and for that reason denied the relief sought by RDF. The court's first finding of fact was that LAFCO "is proceeding reasonably in preparation of spheres of influence . . ." and its second was that RDF had "submitted no facts which would indicate that [LAFCO] has proceeded in an unreasonable or arbitrary manner." LAFCO's argument and the court's findings regarding reasonableness are not in point.[9]

---

[8] *Simi Valley Recreation & Park Dist.* v. *Local Agency Formation Com.* (1975) 51 Cal.App.3d 648 [124 Cal.Rptr. 635], upon which LAFCO relies, does not hold otherwise and is distinguishable on its facts from the case at bench. There the LAFCO had delineated "by necessary implication" the applicable sphere of influence boundary. (*Id.*, at p. 685.) There is no allegation or indication that such action has been taken here.

[9] On the question of reasonableness, we note that an additional five years have passed since the Attorney General's opinion quoted above, and therefore it now may be said, "It is our view that the [*eleven*] years which have elapsed since addition of the sphere requirement exceed a reasonable time." (60 Ops.Cal.Atty.Gen., *supra,* at p. 120, fn. omitted.) As to budgetary constraints, there should be none, since a county board of supervisors must approve the budget

The statutory scheme and the decisions construing it, as well as LAFCO's own Policies and Guidelines, make it clear that LAFCO's review of annexations and other proposals within its jurisdiction must include consideration of the relevant spheres of influence. The fact that LAFCO may be acting reasonably in its effort to adopt spheres cannot relieve it of this statutory mandate.

█ We therefore hold that before a LAFCO may approve a proposal within its jurisdiction, it must develop, determine, adopt, and consider the spheres of influence of each local governmental agency which may include the subject territory in its sphere of influence.

The judgment is reversed, and the cause is remanded to the trial court with directions to enter judgment consistent with the views expressed herein.

Scott, Acting P. J., and Feinberg, J., concurred.

---

presented to it by LAFCO unless the latter has acted arbitrarily and capriciously. (§ 54776; 64 Ops.Cal.Atty.Gen. 633 (1981).) The fact that other LAFCO's around the state may not have completed adoption of spheres of influence may be some evidence that the Santa Cruz LAFCO has acted reasonably, but it does not indicate that it has acted lawfully.