[No. A028744. First Dist., Div. One. May 6, 1987.]

RESOURCE DEFENSE FUND et al., Plaintiffs and Appellants, v. LOCAL AGENCY FORMATION COMMISSION OF SANTA CRUZ COUNTY et al., Defendants and Respondents.

**COUNSEL**

Brown & Scruggs and Thomas N. Brown for Plaintiffs and Appellants.

Anthony J. Franich, Jonathan D. Glidden, Timothy J. Morgan, Liberty, Morgan & Glidden, Liberty & Morgan, Donald R. Haile, City Attorney, McCutchen, Doyle, Brown & Enersen, Daniel J. Curtin, Jr., and Maria P. Rivera for Defendants and Respondents.

OPINION

**RACANELLI, P. J.**—This appeal involves a challenge to the decision of the City of Watsonville and the Santa Cruz County Local Agency Formation Commission (hereafter LAFCO) to annex approximately 74 acres of open space agricultural land to the City of Watsonville.

In January 1981 the owners of a 72-acre apple orchard[1] (the Franich property) petitioned for annexation of the property to the City of Watsonville in order to develop the property for housing. The request was reviewed by the Watsonville Planning Commission and a draft environmental impact report (EIR) was prepared and circulated. The planning commission recommended to the city council that the property be prezoned for development.

On October 27, 1981, the Watsonville City Council held a public hearing and enacted certain resolutions to adopt findings relating to the EIR, prezone the property and initiate annexation proceedings. The city thereupon submitted an application for annexation to the LAFCO.

On September 1, 1982, the LAFCO held a public hearing and adopted findings to approve the annexation. The LAFCO then remanded the matter to the Watsonville City Council. On October 5, 1982, the Watsonville City Council held a public hearing and adopted the final resolution to annex the Franich property and made findings regarding the environmental impact. On October 6, 1982, the LAFCO filed the certification that the annexation was complete.

Plaintiffs Resource Defense Fund and Mary Hammer—a member of the organization and a Santa Cruz County taxpayer—filed two lawsuits which were consolidated for trial: a petition for writ of mandate seeking to compel the LAFCO to set aside its approval of the annexation on the ground that the California Environmental Quality Act (CEQA) had been violated; and a complaint for determination of the validity of the annexation (Code Civ. Proc., § 860), alleging not only CEQA violations but also violations of the Knox-Nisbet Act (*infra*). The trial court rejected plaintiffs' challenges. This appeal ensued. As we will explain, we conclude the judgment must be reversed because both the LAFCO and the city council failed to make necessary findings to explain why the alternative of partial annexation was rejected.

---

[1]The total territory to be annexed was 74.26 acres, of which 72.19 acres is developable property. The remaining acreage is apparently highway frontage.

DISCUSSION

I.  *Spheres of Influence*

Local agency formation commissions (LAFCO's) are the product of the 1965 Knox-Nisbet Act (former Gov. Code, § 54773 et seq.),[2] designed to discourage urban sprawl and to encourage orderly and efficient urban development patterns. (Former Gov. Code, §§ 54774, 54774.5.) To accomplish those objectives LAFCOs have two basic powers: 1) to establish spheres of influence of each local govenmental agency within its county and 2) to approve or disapprove proposals for, inter alia, annexation of territory. (Former Gov. Code, §§ 54774, 54790.)

In 1971 and 1972 the Legislature modified certain statutory language to make the adoption of spheres of influence mandatory, but no deadline was set. In 1977 an opinion of the Attorney General concluded that, despite the absence of an explicit deadline, a county LAFCO must adopt spheres within a reasonable time, and "the six years which have elapsed since addition of the sphere requirement exceed a reasonable time." (60 Ops.Cal.Atty.Gen. 118, 120 (1977).)

In the present lawsuit plaintiffs filed their complaint seeking to invalidate the annexation of the Franich property on the ground, inter alia, that the LAFCO had failed to adopt the required spheres of influence. While this matter was pending below, Division Three of this court held that before a LAFCO may approve an annexation proposal it must "develop, determine, adopt, and consider the spheres of influence of each local governmental agency ...." (*Resource Defense Fund* v. *Local Agency Formation Com.* (1983) 138 Cal.App.3d 987, 989, 994 [188 Cal.Rptr. 499].) Plaintiffs moved for a continuance to permit a summary judgment motion based on that recent court decision. The court granted the request, ordered the issues bifurcated so that the Knox-Nisbet issues would be decided first, and set the date of March 2, 1983, for hearing on the sphere of influence issue.

In the interim, legislation was introduced seeking to ameliorate the effect of the Division Three decision. As a consequence, the court granted the defendants' request for a continuance to await the impending legislative action.

On May 6, 1983, the Governor signed into law urgency legislation giving the LAFCO's until January 1, 1985, to adopt the spheres of influence and

---

[2]The Knox-Nisbet Act was repealed operative January 1, 1986 (Stats. 1985, ch. 541, § 2, No. 4 Deering's Adv. Legis. Service, p. 218) and replaced by the Cortese Local Government Reorganization Act of 1985 (Gov. Code, § 56000 et seq.).

validating previous approvals of annexation.[3] (Former Gov. Code, § 54774.3.)

Thereafter, defendants herein moved for summary adjudication of the sphere of influence issue, and the trial court determined the issue in favor of defendants. Briefing was then submitted on the remaining issues.

On appeal, plaintiffs advance two arguments relating to this issue. ■ First, they argue the trial court erred in granting defendants' continuance to await the adoption of pending legislation. Plaintiffs assert that on March 2, 1983, the date scheduled for hearing, plaintiffs were entitled to a judgment in their favor based upon the holding in *Resource Defense Fund* v. *Local Agency Formation Com., supra,* 138 Cal.App.3d 987. The effect of the continuance, it is argued, was to deny plaintiffs their legal right to a judgment on the merits.

This argument must be rejected. ■ The trial court possesses broad discretion in the disposition of a request for a continuance, and its determination will not be disturbed absent a palpable abuse of discretion. (*Estate of Smith* (1973) 9 Cal.3d 74, 81 [106 Cal.Rptr. 774, 507 P.2d 78].) ■ Here, no clear abuse is shown. The continuance from March 2 to May 20 (later continued for other reasons) to await legislative developments was just as reasonable as the continuance granted earlier to plaintiffs to await the finality of the appellate decision.

■ Plaintiffs further argue that former Government Code section 54774.3 cannot be applied retroactively to validate annexation proceedings which were unlawful prior to the new legislation. Plaintiffs are mistaken. ■ "The Legislature may give laws restrospective application where it clearly evinces that intent and no vested or constitutional rights are infringed. (See *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 591-592 [128 Cal.Rptr. 427, 546 P.2d 1371].) . . .

"Moreover, the Legislature may supply retroactively, through a curative or validating act, any authority it could have provided prospectively through

---

[3]The Legislature declared in pertinent part: "Sec. 2. The approval or conditional approval by a local agency formation commission of an annexation . . . which occurred prior to the determination of a sphere of influence as required by Section 54774 of the Government Code, is hereby confirmed, validated, and declared legally effective solely with respect to the spheres of influence issue, notwithstanding any failure to comply with the requirement that a sphere be determined prior to the commission's action, provided that the approval or conditional approval occurred prior to the effective date of this act.

"Sec. 3. It is the intent of the Legislature in enacting this act to respond to the court's decision in the case of *Resource Defense Fund* v. *Santa Cruz Local Agency Formation Commission* (138 Cal. App. 3d 987), and to delay the deadline for the adoption of spheres of influence until January 1, 1985." (Stats. 1983, ch. 27, p.71.)

an enabling act. (E.g., *Ventura Port Dist.* v. *Taxpayers, Property Owners, etc. Ventura Port Dist.* (1959) 53 Cal.2d 227, 233 [1 Cal.Rptr. 169, 347 P.2d 305]; *City of Fairfield* v. *Hutcheon* (1949) 33 Cal.2d 475, 479 [202 P.2d 745].) Thus, even if the Legislature cannot 'confirm' that such authority always existed, despite contrary judicial precedent, it may furnish the missing authority nunc pro tunc." (*Southern Cal. Gas Co.* v. *Public Utilities Com.* (1985) 38 Cal.3d 64, 67 [211 Cal.Rptr. 99, 695 P.2d 186].)

■ In enacting former Government Code section 54774.3, the Legislature validated approvals of annexation made before January 1, 1985, without the adoption of spheres of influence. Thus, the Legislature supplied county LAFCO's with necessary authority to act nunc pro tunc.

Plaintiffs contend, however, that such retroactive application of the statute constitutes a denial of due process by depriving them of a vested property right—their right to a judgment in their favor. The contention is specious.

Plaintiffs rely upon the fact that a judgment is a property right which cannot be taken without due process. But plaintiffs did not have a judgment. They had, at most, a chose in action—a ground for invalidating governmental action. Plaintiffs had no vested right to a "favorable" determination.

We conclude that the then new legislation controls and validated the LAFCO's approval of the annexation notwithstanding the absence of disputed spheres of influence.

## II.   *CEQA Violations*

### A.   *The Defective EIR*

■ It is well established that an annexation proceeding may have potential environmental effects thus triggering the requirement of an EIR. (*Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263 [118 Cal.Rptr. 249, 529 P.2d 1017].) Two major principles are significant herein. First, an EIR must describe and evaluate alternatives to the proposed action. (Pub. Resources Code, § 21061; Cal. Admin. Code, tit. 14 [hereafter Guidelines], § 15126, subd. (d).) Second, when a draft EIR is revised and the revised EIR contains significant new information, CEQA demands that the revised EIR be circulated for public and agency comment. (*Sutter Sensible Planning, Inc.* v. *Board of Supervisors* (1981) 122 Cal.App.3d 813 [176 Cal.Rptr. 342].)

In the present case, a draft EIR was prepared and circulated in advance of the planning commission's review of the annexation petition, but no mention was made of any alternatives to annexation. The only "alternatives"

cited were four different ways of developing the full 74-acre site. Among the comments received related to this draft was a suggestion that the alternative of *partial* annexation be considered, i.e., annexation of only some of the 74 acres. Thereupon, the EIR was redrafted to include a discussion of partial annexation.

With the preparation of this "final draft," the planning commission declared the EIR completed and adopted findings identifying significant environmental effects and delineating either the mitigation measures to be taken or the infeasibility of mitigation measures. The final EIR was then presented to the Watsonville City Council for approval, and that body adopted the same findings.

In their lawsuit, plaintiffs argued that the EIR adopted by the city council was defective in several respects. The trial court found one of plaintiffs' arguments meritorious: the draft EIR was defective in failing to consider the alternative of partial annexation. Accordingly, the court determined that the failure to circulate the final EIR after the original EIR had been redrafted to include project alternatives rendered the EIR defective. ■ However, the court concluded plaintiffs were foreclosed from raising that issue by reason of their failure to call the defect to the attention of the city council for possible correction.

We think the trial court's ruling was correct. It is axiomatic that judicial review is precluded unless the issue was first presented at the administrative level. (*Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412 [194 Cal.Rptr. 357, 668 P.2d 664] [inadequate EIR]; *Coalition for Student Action* v. *City of Fullerton* (1984) 153 Cal.App.3d 1194, 1197 [200 Cal.Rptr. 855] [failure to prepare an EIR]; *City of Walnut Creek* v. *County of Contra Costa* (1980) 101 Cal.App.3d 1012 [162 Cal.Rptr. 224] [inconsistency with general plan].) Although it is true the plaintiff need not have *personally* raised the issue (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 267-268 [104 Cal.Rptr. 761, 502 P.2d 1049]), the exact issue raised in the lawsuit must have been presented to the administrative agency so that it will have had an opportunity to act and render the litigation unnecessary. (*Coalition for Student Action* v. *City of Fullerton, supra,* 153 Cal.App.3d at p. 1198.)

In the case at bench, no one appeared at the city council meeting in opposition to the annexation proposal. Although Supervisor Patton had apparently seen the final EIR and submitted written comments, he did not raise the same issue raised in the lawsuit, namely, the failure to recirculate the EIR after redrafting. Accordingly, plaintiffs could not raise the issue for the first time in litigation.

On appeal, plaintiffs make two arguments. First, they contend that they should not be faulted for failing to appear at a meeting of which they had no actual knowledge. (It is undisputed that plaintiffs were unaware of the meeting of the city council.) But the city council meeting was a public hearing which was duly noticed, both by mail to adjoining landowners and by publication in the local newspaper. Clearly, plaintiffs were at least charged with constructive knowledge of the public council meeting and cannot now be heard to complain of an alleged lack of notice.

Second, relying upon *Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105, 112-114 [122 Cal.Rptr. 282], plaintiffs argue that the doctrine of exhaustion of administrative remedies ought not to be applied to public interest groups seeking to enforce compliance with the law. We disagree.

The Supreme Court has declined to adopt a broad exemption from the exhaustion doctrine for public interest organizations. (*Sea & Sage Audubon Society, Inc.* v. *Planning Com., supra,* 34 Cal.3d 412, 418.) And we, too, decline to extend *Corte Madera* beyond its facts. In contrast to the environmental group in *Corte Madera,* plaintiffs here had notice of the public hearing before the city council. Moreover, in the later proceedings before the LAFCO, plaintiffs did appear but nevertheless failed to alert the agency to the defective EIR. Under these circumstances, we do not think plaintiffs' failure to raise the point to the city council can be excused.

### B. *Failure to Recirculate the EIR*

When a project must be approved by two or more agencies, as here, one agency is designated the "lead agency," the public agency with principal responsibility for preparation of the EIR. (Pub. Resources Code, §§ 21067, 21165.) The other agency, designated the "responsible agency," must consider the EIR prepared by the lead agency and reach its own conclusions whether to approve the project and what alternatives or mitigation measures should be adopted. (Pub. Resources Code, § 21069; Guidelines, § 15085.5 [repealed and replaced by § 15096].)

In the present case, the City of Watsonville, as lead agency, certified the EIR which was thereafter considered by the LAFCO, the responsible agency, in reaching its decision to approve the proposed annexation.

In their lawsuit, plaintiffs argued that the LAFCO's decision to approve the annexation was invalid because the EIR was not recirculated after being redrafted to include alternatives to the annexation. Apparently the trial court rejected the argument for the same reasons discussed in part I: plaintiffs' failure to raise the objection during the administrative proceedings.

In the LAFCO proceedings, both the Sierra Club and the Resource Defense Fund raised objections to the annexation but only on the ground that no spheres of influence had been adopted for the area. (See part I, *ante.*) However, no one raised the point now urged: that the EIR was defective. For the reasons discussed in section A, *ante,* plaintiffs are precluded from raising the issue in the courts.

## C. *Lack of Findings*

■ Once the EIR identifies significant environmental effects, the public agency must make certain findings before approving the project: that changes have been required in the project to mitigate the significant effects; that such changes have been adopted by another responsible agency; or that mitigation measures or project alternatives are infeasible. (Pub. Resources Code, § 21081; *Cleary v. County of Stanislaus* (1981) 118 Cal.App.3d 348, 360-362 [173 Cal.Rptr. 390].) State policy dictates that "public agencies should not approve projects as proposed if there are feasible alternatives or feasible mitigation measures available which would substantially lessen the significant environmental effects . . . ." (Pub. Resources Code, § 21002.) Thus, the purpose of the statutory requirement for findings is to ensure that the decisionmaking agency actually considers alternatives and mitigation measures. (*Village Laguna of Laguna Beach, Inc.* v. *Board of Supervisors* (1982) 134 Cal.App.3d 1022, 1034 [185 Cal.Rptr. 41].)

■ As previously noted, although the lead agency prepares the EIR, the responsible agency must independently make its own findings and conclusions. (Guidelines, § 15085.5, subds. (g), (h) [repealed and replaced by § 15096].) The guidelines further require that the findings be written and accompanied by a supporting statement of facts. (Guidelines, § 15088 [repealed and replaced by § 15091].)

At trial plaintiffs argued, and the trial court found, that the LAFCO did not make an express finding rejecting the alternative of partial annexation. However, the court concluded the defect was harmless, reasoning in part, that: "The Commission did however by specific vote expressly reject that alternative and that vote is the equivalent of a finding." We disagree with the court's determination.

It is true that the LAFCO expressly rejected the alternative of partial annexation. At the hearing the commission had before it a staff report recommending that the annexed area include only 19.3 acres, rather than the 74 acres as proposed. A motion to accept that recommendation was defeated. Instead, the commission members voted to approve the full 74 acres.

But merely rejecting the project alternative was insufficient. The LAFCO was required to make a written finding that the project alternative was infeasible (Pub. Resources Code, § 21081), and that finding should have been accompanied by a supporting statement of facts (Guidelines, former § 15088, subd. (a)). Discussion of partial annexation followed by the vote of the LAFCO members did not constitute a functional equivalent satisfying these requirements. (*San Bernardino Valley Audubon Society, Inc.* v. *County of San Bernardino* (1984) 155 Cal.App.3d 738, 752-753 [202 Cal.Rptr. 423]; see also *Pacifica Corp.* v. *City of Camarillo* (1983) 149 Cal.App.3d 168, 179 [196 Cal.Rptr. 670]; *Woodland Hills Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825, 837-838 [118 Cal.Rptr. 856].)

Moreover, whenever an agency approves a project despite adverse environmental effects, it must prepare a statement of overriding considerations. (Guidelines, § 15089 [repealed and replaced by § 15093].) Here, the Watsonville Planning Commission adopted the EIR findings and, as to six of the adverse effects, found that mitigation measures or alternatives were infeasible. The planning commission then prepared a statement of overriding considerations for each of those findings. The city council later adopted the same findings and statement as its own.

In the LAFCO proceedings, the LAFCO's resolution to approve the annexation declared in pertinent part: "The Commission has genuinely considered the environmental effects of the project as shown in the Final Environmental Impact Report certified by the City of Watsonville on October 27, 1981, and the Commission makes all the findings listed in the column labeled 'LAFCO Findings' of the Summary Matrix, as well as the findings listed in the Statement of Overriding Concerns dated October 27, 1981." The trial court concluded that the absence of more explicit findings by the LAFCO was harmless in light of that resolution incorporating by reference the statement of overriding considerations adopted by the city council. We must disagree.

In reaching that conclusion, the trial court erroneously assumed that the city council's statement of overriding considerations reflected a meaningful analysis of the alternative of partial annexation and disclosed the reasons for rejecting that alternative. In fact, the statement of overriding considerations accomplished no such purpose. It merely justified rejection of *no* annexation, but it did not analyze the alternative of *partial* annexation. Indeed, the trial court acknowledged as much when it rejected the city council's subsequent findings. (§ D, *infra.*)

In any event, the conventional "harmless error" standard has no applica-

tion when an agency has failed to proceed as required by the CEQA. (*Rural Landowners Assn.* v. *City Council* (1983) 143 Cal.App.3d 1013, 1019-1023 [192 Cal.Rptr. 325].) Failure to comply with the CEQA procedures is necessarily prejudicial.[4]

The attendant harm which results from such noncompliance with CEQA (due to the failure to make necessary findings explaining the reasons for rejecting an alternative as infeasible) is a subject of continuing judicial concern: "when a project is approved that will significantly affect the environment, CEQA places the burden on the approving agency to affirmatively show that it has considered the identified means of lessening or avoiding the project's significant effects and to explain its decision allowing those adverse changes to occur.

"The writing of a perfect EIR becomes a futile action if that EIR is not adequately considered by the public agency responsible for approving a project. Indeed, it is almost as if no EIR was prepared at all . . .

"Additionally, even though the board may have fully considered the EIR and made a wise and eminently rational decision in approving the proposed project, the board's thinking process, its 'analytic route,' has not been revealed. Only by making this disclosure can others, be they courts or constituents, intelligently analyze the logic of the board's decision." (*Village Laguna of Laguna Beach, Inc.* v. *Board of Supervisors, supra,* 134 Cal.App.3d at pp. 1034-1035; accord *City of Poway* v. *City of San Diego* (1984) 155 Cal.App.3d 1037 [202 Cal.Rptr. 366].)

In summary, while we conclude that the trial court correctly determined that the challenged LAFCO findings were defective, we also conclude that the court erred in finding such defect harmless. The trial court should have remanded the matter to the LAFCO for an independent preparation of adequate findings in support of rejection of partial annexation as an alternative to the proposed project.

### D. *Interlocutory Remand*

■ After the LAFCO approved the annexation proposal, the matter was returned to the Watsonville City Council for a public hearing and final proceedings. At the hearing, the city council declared the EIR adequate,

---

[4]Nor does former Government Code section 54775.2 create a harmless error standard for LAFCO proceedings. The statute declares that the sole inquiry in a validation proceeding shall be whether there was fraud or prejudicial abuse of discretion. Pursuant to *Rural Landowners Assn.* v. *City Council, supra,* 143 Cal.App.3d 1013, failure to comply with CEQA procedures constitutes a prejudicial abuse of discretion.

adopted the findings and statement of overriding considerations which had been previously adopted, and thereupon formally authorized the annexation.

At trial, plaintiffs argued, and the court found, that the city's findings were inadequate due to the city council's failure to make findings explaining why it rejected the alternative of partial annexation. In an apparent effort to remedy the fatal omission, the trial court entered an "interlocutory judgment" remanding the matter to the city council for promulgation of appropriate findings and ordering judgment to be entered after action by the city council or the expiration of 60 days.

Thereafter, the city council met and adopted specific findings which were duly submitted to the trial court which then entered final judgment in favor of defendants.

Plaintiffs challenge the unusual procedure employed by the trial court in permitting the city council to reassume its administrative role in order to correct its error and thereby effectively deny plaintiffs a favorable judgment on the merits shown. We conclude the interlocutory remand was improper.

We cannot agree that an interlocutory judgment is authorized by Code of Civil Procedure section 1094.5. That statute authorizes remand *when the writ is granted*: "Where the judgment commands that the order or decision be set aside, it may order the reconsideration of the case in the light of the court's opinion and judgment and may order respondent to take such further action as is specially enjoined upon it by law. . . ." (Code Civ. Proc., § 1094.5, subd. (f).) In proper context, the questioned remand is not a prejudgment procedure.

The point is illustrated in *Mountain Defense League* v. *Board of Supervisors* (1977) 65 Cal.App.3d 723 [135 Cal.Rptr. 588], a case relied upon by defendants. There, an environmental group challenged an amendment to the county's general plan, arguing in part that the board of supervisors failed to make necessary findings. The trial court denied a writ of mandate, but the Court of Appeal agreed with the plaintiff that findings were required: "The matter must be remanded for the Board to make the necessary findings to support its resolution [citations]." (*Id.,* at p. 732.)

Defendants focus upon the quoted language but conveniently ignore the court's disposition. To accomplish the remand, the appellate court reversed the judgment and directed the trial court to *issue a writ of mandate ordering the board of supervisors to make findings.* (65 Cal.App.3d at p. 734.) Thus, the procedure for remanding the matter to the agency is a remedy to be

employed when granting the writ; it is *not,* however, a procedure to be employed prior to such judgment.[5]

Moreover, we think the use of an interlocutory remand raises serious questions of due process: it effectively precluded any possible challenge to the sufficiency of the evidence to support the new findings. Under the procedure employed by the trial court, the city council was given 60 days to make "findings," upon which event judgment was to be entered in favor of the city and the LAFCO. The misguided attempt to salvage the defective proceedings provided no opportunity to test the adequacy of the new findings or otherwise challenge the existence of supporting evidence and compliance with the CEQA. The procedure fostered a *post hoc* rationalization, which the courts have soundly condemned. (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 81 [118 Cal.Rptr. 34, 529 P.2d 66].)

In this respect alone, we find the interlocutory judgment grievously erroneous. As is apparent, had the court granted the writ of mandate compelling the city council to prepare new findings, plaintiffs would have been entitled to challenge those findings at that level and thereafter to litigate any claim of insufficiency of those findings.

Although plaintiffs have requested this court to review the sufficiency of the evidence to support the new findings, we find it unnecessary to do so. Since we determine that the LAFCO's approval of the annexation is invalid due to its failure to make the required findings, the matter must be remanded to that agency for further proceedings.

The judgment is reversed and the matter is remanded to the trial court with directions to issue a writ of mandate ordering the LAFCO and the Watsonville City Council to set aside the approval of the annexation and to undertake further proceedings consistent with the views expressed herein.

Elkington, J., and Newsom, J., concurred.

The petition of all respondents except Local Agency Formation Commission of Santa Cruz County for review by the Supreme Court was denied July 29, 1987.

---

[5]We respectfully disagree with the language in *Rapid Transit Advocates, Inc.* v. *Southern Cal. Rapid Transit Dist.* (1986) 185 Cal.App.3d 996, 1002-1003 [230 Cal.Rptr. 225] [upholding trial court's midtrial remand for clarification of ambiguous findings]. We find nothing in section 1094.5 which permits a remand prior to judgment.