Filed 4/12/22; Certified for Publication 5/11/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| WE ADVOCATE THROUGH ENVIRONMENTAL REVIEW et al., | C091012 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCCVPT20180531) |
| v. | |
| CITY OF MOUNT SHASTA et al., | |
| Defendants and Respondents; | |
| CRYSTAL GEYSER WATER COMPANY, | |
| Real Party in Interest and Respondent. | |

From 2001 to 2010, a water bottling company operated a plant in Siskiyou County (the County) that extracted groundwater and then used it to produce bottled water. A few years after the plant closed, Crystal Geyser Water Company (Crystal Geyser) bought the facility and sought to revive it. To that end, Crystal Geyser requested, among other

1

things, a permit from the County to build a caretaker's residence for the bottling plant and a permit from the City of Mt. Shasta (the City) to allow the plant to discharge wastewater into the City's sewer system. Both the County and the City ultimately granted Crystal Geyser the permits it sought.

This appeal concerns one of two lawsuits challenging these approvals, both of which are now on appeal and both of which concern the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.). In one suit, Appellants We Advocate Thorough Environmental Review and Winnehem Wintu Tribe alleged that the County's environmental review for the bottling facility was inadequate under CEQA. In another, they alleged that the City's decision to issue the wastewater permit for the bottling plant, which relied on the County's environmental review for the facility, was also improper under CEQA.

We focus here on Appellants' challenge to the City's approval of the wastewater permit. CEQA generally requires public agencies, like the County and the City, to consider the environmental consequences of discretionary projects they propose to approve. When multiple agencies propose to approve aspects of the same project, as here, one serves as the "lead agency" that conducts environmental review for the whole of the project and all others serve as "responsible agencies" that conduct a more limited review of the project. In this case, the County served as the lead agency and the City served as one of several responsible agencies for the proposed bottling facility. According to Appellants, the City failed to comply with its obligations as a responsible agency for three reasons. First, they assert that the City failed to make certain findings that are required under CEQA before issuing the wastewater permit for the bottling facility. Second, they contend that the City should have adopted mitigation measures to address some of the bottling facility's environmental impacts before approving the permit. And lastly, they argue that the City should have performed additional environmental review following a late revision to the permit.

2

The trial court rejected all Appellants' arguments.  But we agree with Appellants on one point:  The City should have made certain findings under CEQA before issuing the wastewater permit.  Because the County, during its environmental review, found several potentially significant impacts associated with the City's permitting of the project, the City needed to make certain findings before issuing its permit.  In particular, it needed to make one or more of the following findings for each significant impact that the County identified:  the impact has been mitigated or avoided; the measures necessary for mitigation are within the responsibility and jurisdiction of another public agency and have been, or can and should be, adopted by that other agency; or specific economic, legal, or other considerations make mitigation infeasible.  Apart from needing to make one or more of these findings for each significant impact, the City also needed to supply a brief explanation of the rationale for each finding.

The City, however, never complied with these requirements.  It never acknowledged the significant impacts that the County identified.  It never said whether these impacts would be mitigated, whether another agency would handle mitigation, or whether mitigation would be infeasible.  And it never supplied any reasoning for the required findings.  It instead, in a single sentence, said only this:  The City has reviewed the County's report on the project and "finds no unmitigated adverse environmental impacts relating to the alternate waste discharge disposal methods."  Because we find this brief statement inadequate to satisfy CEQA, we reverse.

BACKGROUND

CEQA serves "to ensure that public agencies will consider the environmental consequences of discretionary projects they propose to carry out or approve."  (*Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 488.)  To fulfill this purpose, as relevant here, CEQA requires an agency proposing to approve or carry out a project to prepare a document called an Environmental Impact Report, or an EIR, if

3

the project "may have a significant effect on the environment." (Pub. Resources Code, §§ 21100, subd. (a), 21151, subd. (a).)

The agency charged with preparing the EIR for a project is known as the "lead agency" and is "responsible for considering the effects, both individual and collective, of all activities involved in a project." (Pub. Resources Code, §§ 21002.1, subd. (d), 21067 [defining "lead agency"].) Other agencies that also have a role in approving or carrying the project, but which are not the lead agency, are known as "responsible agencies" and generally consider only the effects of those parts of the project that they decide to carry out or approve. (*Ibid.*; Cal. Code. Regs., tit. 14, § 15096.)[1]

In this case, after Crystal Geyser sought various governmental approvals for a proposed bottling facility, the County served as the lead agency in evaluating the facility's potential environmental impacts. In its draft EIR, the County explained that, in general, "[t]he Proposed Project entails renovations to a former bottling plant in unincorporated Siskiyou County . . . adjacent to the City of Mt. Shasta (City) for the production of sparkling water, flavored water, juice beverages, and teas." It added that, to facilitate the project, Crystal Geyser would need to obtain permits from several public agencies, including a permit from the County for construction of a caretaker's residence for the plant, a permit from the City for wastewater discharge from the plant, and several other permits. The County evaluated in its draft EIR the potential environmental impacts associated with all these governmental approvals.

The City, having a more limited role, served as one of several responsible agencies for the project. In this role, the City shared a draft of the wastewater permit it proposed for the project, which the County then included and discussed in its EIR. The City also,

---

[1] California Code of Regulations, title 14, sections 15000-15387 are ordinarily referred to as the CEQA Guidelines. We will use that shorthand to refer to these regulations going forward.

4

at various stages of the administrative proceedings, commented on the project and the County's environmental review.

Sometime after the County certified the EIR, the City moved to finalize the terms of the wastewater permit for the bottling facility. The initial draft of the permit, which was part of the EIR, purported to authorize Crystal Geyser to "discharge process, non-process, and sanitary wastewater to the City of Mt. Shasta sewer system." It added that "[t]his wastewater includes high-strength wastewater from spilled product and internal and external cleaning and sanitizing chemicals (e.g., sodium hydroxide and acids); flavor change rinse water; and final rinse water from product lines and tanks." The final version of the permit kept all this language and further added that "[t]his wastewater" also includes "condensate, boiler blowdown water, [and] cooling tower blowdown water."

The City council later approved the permit as revised. In its resolution approving the permit, the City council stated: "The City Council has considered the Environmental Impact Report prepared by the County of Siskiyou for the Crystal Geyser Bottling Plant and finds no unmitigated adverse environmental impacts relating to the alternate waste discharge disposal methods."

Appellants afterward filed a petition for writ of mandate alleging that the City and its council violated CEQA. In their suit, they alleged that the City failed to make the findings required under Public Resources Code section 21081—a statute that requires public agencies to make certain findings before approving a project "for which an environmental impact report has been certified which identifies one or more significant effects on the environment." Appellants also alleged that the City should have adopted "the mitigation measures set forth in the EIR for the portions of the Bottling Facility project under the City's jurisdiction." Lastly, as relevant here, they alleged that "[a]dditional environmental review was necessary as a result of the addition of three unanalyzed waste-streams in the final [wastewater permit]." Apart from raising these substantive claims, Appellants also asked the trial court to take judicial notice of two

5

letters that, according to Appellants' counsel, should have been part of the record before the trial court but "were inadvertently left out."

The trial court rejected all Appellants' arguments and requests. First, the court rejected Appellants' request for judicial notice, finding that "[t]he documents proposed are not helpful to the court in determining the facts of this case and include confidential information. . . ." Second, the court concluded that the City had no need to make findings under Public Resources Code section 21081. It reasoned: "If the responsible agency determines that there is no unmitigated significant impact to the environment, then the responsible agency is not required to make written findings." Third, the court found that, despite Appellants' argument otherwise, the City did adopt mitigation measures. It stated that the City's permit "contains conditions requiring [Crystal Geyser] to comply with the project EIR which includes mitigation measures for that part of the project over which the City has authority." Finally, the court declined to find that the City needed to perform additional environmental review for the revised permit. It reasoned that the City determined that the revision would not add new significant impacts and that Appellants failed to meet their "burden to show that there is an absence of substantial evidence supporting the City's decision."

Appellants appealed, raising the same four claims discussed above.[2]

DISCUSSION

We start with Appellants' claim that the trial court improperly denied their request for judicial notice.

---

[2] A few months before filing this action, Appellants also filed a related action challenging the adequacy of the County's EIR. In that case too, the trial court rejected all Appellants' claims. Appellants afterward appealed the court's decision, which we consider in the separate case of *We Advocate Thorough Environmental Review et al. v. County of Siskiyou et al.* (Case No. C090840).

6

Shortly after preparing the record for the trial court, Appellants noticed that two letters had inadvertently been left out. They then requested judicial notice of the letters, along with the "complete administrative record of proceedings lodged" in the related case titled *We Advocate Thorough Environmental Review et al. v. County of Siskiyou et al.* (Case No. C090840). They argued that these records should be judicially noticed under Evidence Code section 452 because they are county records. (See Evid. Code, § 452 [judicial notice "may" be taken of certain types of records].) The trial court, however, denied the request, explaining that "[t]he documents proposed are not helpful to the court in determining the facts of this case and include confidential information. . . ."

In Appellants' view, the trial court was wrong to deny the request on this ground. They reason that "[t]he law mandates that letters submitted to a public agency regarding its review of a project" must be included in the record before the trial court even if unhelpful. Appellants base their argument on Public Resources Code section 21167.6, which, relevant here, states that the record in CEQA cases "shall include," among other things, "[a]ll written comments received in response to, or in connection with, environmental documents prepared for the project, including responses to the notice of preparation." (Pub. Resources Code, § 21167.6, subd. (e)(6).)

We find no reversible error. Even if, as Appellants argue, the two letters should have been part of the record before the trial court, that is not reason enough to require reversal. Reversal would be appropriate, instead, only if the exclusion of these letters caused prejudice. (See *Madera Oversight Coalition, Inc. v. County of Madera* (2011) 199 Cal.App.4th 48, 75 [exclusion of a "letter from the administrative record d[id] not constitute reversible error because its exclusion resulted in no prejudice to plaintiffs"], disapproved of on another ground by *Neighbors for Smart Rail v. Exposition Metro Line Construction Authority* (2013) 57 Cal.4th 439, 457.) But because Appellants make no effort to show that the exclusion of these letters was prejudicial, declining even to dispute the City's claim that these letters are irrelevant to the issues in this case, we decline to

7

find reversal appropriate here. (*Ibid.*; see also *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [denying requests for judicial notice where "the requests present[ed] no issue for which judicial notice of these items [wa]s necessary, helpful, or relevant"].)

We consider next Appellants' contention that the City failed to make the findings required under CEQA before approving the project.

Before turning to the substance of Appellants' claim, we start with a little more background on the distinction between "lead" and "responsible" agencies. Under CEQA, the " '[l]ead agency' means the public agency which has the principal responsibility for carrying out or approving a project which may have a significant effect upon the environment." (Pub. Resources Code, § 21067.) A "responsible agency," in turn, is "a public agency, other than the lead agency, which has responsibility for carrying out or approving a project." (*Id.*, § 21069.)

Both types of agencies play important roles under CEQA, though their roles are markedly different. A lead agency, notably, must consider all environmental impacts of the project before approving it. (*Id.*, § 21002.1, subd. (d) ["The lead agency shall be responsible for considering the effects, both individual and collective, of all activities involved in a project."].) But a responsible agency need only consider the direct or indirect environmental effects of those parts of the project that it decides to carry out or approve. (See *ibid.* ["A responsible agency shall be responsible for considering only the effects of those activities involved in a project which it is required by law to carry out or approve."]; CEQA Guidelines, § 15096, subd. (g)(1) ["A responsible agency has responsibility for mitigating or avoiding only the direct or indirect environmental effects of those parts of the project which it decides to carry out, finance, or approve."]; *California Coastkeeper Alliance v. State Lands Com.* (2021) 64 Cal.App.5th 36, 55.)

Although distinct in this regard, however, lead and responsible agencies are similar in an important respect: Each must, before "approv[ing] or carry[ing] out a

8

project for which an environmental impact report has been certified which identifies one or more significant effects on the environment that would occur if the project is approved or carried out," "make[] one or more of the following findings with respect to each significant effect: [¶] (1) Changes or alterations have been required in, or incorporated into, the project which mitigate or avoid the significant effects on the environment. [¶] (2) Those changes or alterations are within the responsibility and jurisdiction of another public agency and have been, or can and should be, adopted by that other agency. [¶] (3) Specific economic, legal, social, technological, or other considerations . . . make infeasible the mitigation measures or alternatives identified in the environmental impact report." (Pub. Resources Code, § 21081, subd. (a).) Each agency's findings, moreover, must be "accompanied by a brief explanation of the rationale for each finding." (CEQA Guidelines, § 15091, subd. (a); see also *Resource Defense Fund v. Local Agency Formation Com.* (1987) 191 Cal.App.3d 886, 896 ["the responsible agency must independently make its own findings and conclusions" and these "findings [must] be written and accompanied by a supporting statement of facts"], disapproved of on another ground by *Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 529.)

In this case, Appellants argue that the City never complied with these basic requirements of CEQA. We agree. The EIR identified several potentially significant impacts associated with Crystal Geyser's proposed discharge of wastewater into the City's sewer system. It said, for example, that wastewater from the project could exceed the capacity of the City's wastewater treatment plant and thus result in a significant impact. It also, as another example, said that the project could require the installation of additional pipelines to discharge wastewater into the City's sewer system, and that the installation of these pipelines could potentially result in significant impacts to fishery resources, several endangered species, and cultural resources. The EIR then went on to discuss several mitigation measures to address these impacts. But the City, for its part,

9

never discussed these significant impacts. It instead, in its resolution approving the permit, said only this: "The City Council has considered the Environmental Impact Report prepared by the County of Siskiyou for the Crystal Geyser Bottling Plant and finds no unmitigated adverse environmental impacts relating to the alternate waste discharge disposal methods."

But a blanket finding that a project includes "no unmitigated adverse environmental impacts" does not satisfy CEQA's findings requirement. Again, CEQA required the City, for "each significant effect" identified in the EIR associated with the City's permit, to make one or more of the following findings: "the project's significant environmental effects have been mitigated or avoided ([Pub. Resources Code], § 21081, subd. (a)(1)), . . . the measures necessary for mitigation 'are within the responsibility and jurisdiction of another public agency and have been, or can and should be, adopted by that other agency' (*id.*, § subd. (a)(2)), and/or . . . 'specific economic, legal, social, technological, or other considerations' render mitigation 'infeasible' (*id.*, § subd. (a)(3))." (*City of Marina v. Board of Trustees of California State University* (2006) 39 Cal.4th 341, 350 (*Marina*).) But the City made none of these findings. Nor did it acknowledge that the EIR identified several potentially significant effects associated with the part of the project that it decided to approve. Nor, finally, did it provide the required "brief explanation of the rationale" for its nonexistent findings. (CEQA Guidelines, § 15091, subd. (a); see also *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 404 [under CEQA, an agency's conclusion as to whether a given impact is significant is not enough; "there must [also] be a disclosure of the 'analytic route the . . . agency traveled from evidence to action' "].)

Because of these shortcomings, we find the City violated CEQA's procedural requirements. We also find unpersuasive the trial court's reasoning for holding otherwise. The trial court stated: "If the responsible agency determines that there is no unmitigated significant impact to the environment, then the responsible agency is not

10

required to make written findings." The court, in other words, concluded that an agency need only make findings under Public Resources Code section 21081 when the EIR identifies significant environmental impacts that will not be mitigated. The City echoes this sentiment on appeal. But if an EIR explains that a project would have significant effects, but that imposed mitigation measures would reduce each of these effects to an insignificant level, that is not a reason for declining to make written findings. That is instead a reason for finding that "[c]hanges or alterations have been required in, or incorporated into, the project which mitigate or avoid the significant effects." (Pub. Resources Code, § 21081, subd. (a)(1).) Again, however, the City neither made this finding for each significant effect identified in the EIR nor supplied any explanation in support of this finding.

We turn next to Appellants' claim that the City should have "adopt[ed] the [mitigation] measures" identified in the EIR for the sewer improvements and "include[d] them in a mitigation and monitoring plan."

Appellants offer several points in support of their argument. They first assert that the City should have adopted these measures because the County, which is largely charged with monitoring the imposed mitigation measures, "does not have the clear ability to enforce most of the mitigation measures." Appellants reason that the County lacks this "true ability to monitor or enforce mitigation measures" because "[t]he County's enforcement authority is attached to [a permit] for [a] structure" (the caretaker's residence) that is "unnecessary" and that Crystal Geyser "does not need." Appellants, in other words, appear to argue that the County's enforcement authority is contingent on the caretaker's residence for the bottling facility being necessary; but because the residence is actually "unnecessary," the County has no "true ability to monitor or enforce mitigation measures." Appellants, however, neglect to provide any legal authority for this conclusion. Nor do they supply evidentiary support for their claim that the residence is "unnecessary." Considering their cited evidence, they have at most shown that no single

11

Crystal Geyser employee may occupy the residence more than 40 hours per week. But that, in itself, does not show that the residence is somehow unnecessary. We thus reject this unsupported argument concerning the project's mitigation measures.

Appellants further contend that the City should have either adopted these mitigation measures or "at least ma[d]e CEQA findings stating that the mitigation would be the responsibility of another agency." We generally agree. CEQA requires "[e]ach public agency," including each responsible agency, to "mitigate or avoid the significant effects on the environment of projects that it carries out or approves whenever it is feasible to do so." (Pub. Resources Code, § 21002.1, subd. (b); see CEQA Guidelines, § 15096, subd. (g)(1) [discussing the mitigation obligations of responsible agencies].) But CEQA "does not require a public agency to undertake identified mitigation measures, even if those measures are necessary to address the project's significant environmental effects, if the agency finds that the measures 'are within the responsibility and jurisdiction of another public agency and have been, or can and should be, adopted by that other agency.' (Pub. Resources Code, § 21081, subd. (a)(2).)" (*Marina, supra*, 39 Cal.4th at p. 366.)

Considering these principles, should the City decide to approve the project once more following remand, it will need to consider these types of issues before approving the project. And when that time comes, considering the parties' briefing in this case, we expect the City will assert that it need not adopt any of the mitigation measures for the sewer improvements because these measures are within the jurisdiction of another public agency and have been, or can and should be, adopted by that agency. And should the City in fact do so, we expect Appellants will dispute that finding. But we need not decide today whether the City could in fact disclaim responsibility for these measures on the ground that they are the responsibility of some other agency—an issue we find to be premature at this stage. We simply note, at this time, that the City may "disclaim[] the responsibility to mitigate environmental effects . . . only when the other agency said to

12

have responsibility has *exclusive* responsibility." (*Marina, supra*, 39 Cal.4th at p. 366; see CEQA Guidelines, § 15091, subd. (c).)

Lastly, we consider Appellants' contention that the City should have performed additional environmental review and allowed for further public review before it approved a revised version of the wastewater permit.

The City's permit, again, authorizes Crystal Geyser to "discharge process, non-process, and sanitary wastewater to the City of Mt. Shasta sewer system." In the initial draft of the permit, the version included in the EIR, the permit stated that "[t]his wastewater includes high-strength wastewater from spilled product and internal and external cleaning and sanitizing chemicals (e.g., sodium hydroxide and acids); flavor change rinse water; and final rinse water from product lines and tanks." But in the final draft, the permit noted that "[t]his wastewater" also includes "condensate, boiler blowdown water, [and] cooling tower blowdown water."

Of these three additions, Appellants express concern about the latter two: boiler blowdown water and cooling tower blowdown water. In Appellants' telling, Crystal Geyser's consultant explained that both these waste streams would contain anti-scaling chemicals, including Boilermate 1200S (which, according to its safety data sheet, should not be "discharge[d] into lakes, streams, ponds or public waters") and Boilermate 3300C (which, according to its safety data sheet, can be acutely toxic). Appellants then argue that the City should have "disclose[d]" and "adequately reviewed" these changes before approving the permit. The City, for its part, counters that the Boilermate products are simply replacements for a product, Boilercare, that was identified in the EIR but that "is no longer manufactured." The City adds that its consultant characterized Boilermate as an "equivalent product" and concluded that "no detrimental effects are anticipated at the [City's wastewater treatment plant]."

Without needing to delve into the merits of the City's response, we reject Appellants' argument. To start, we reject their characterization of the facts. Appellants,

13

again, citing an email from Crystal Geyer's consultant, allege that " 'boiler blow down water' and 'cooling tower blowdown water' " would "contain anti-scaling chemicals." But the consultant said only that boiler blowdown water would contain anti-scaling chemicals and emphasized that cooling tower blowdown water "would have no added chemicals."

Apart from overstating the facts, Appellants also fail to identify any law that the City potentially violated. As legal authority for their argument, Appellants note that public agencies are required to make certain findings under Public Resources Code section 21081 before approving a project and that an EIR that omits essential information is subject to de novo review. But although Public Resources Code section 21081 is certainly relevant to Appellants' argument concerning the lack of CEQA findings, which we discussed earlier, it carries no relevance to their current argument. And although true that an EIR that omits essential information is subject to de novo review (*Banning Ranch Conservancy v. City of Newport Beach* (2017) 2 Cal.5th 918, 935), we are not evaluating the merits of the EIR here. To the extent Appellants believe otherwise and think their suit against the City is an appropriate forum for challenging the County's EIR, they are wrong. (*Friends of Outlet Creek v. Mendocino County Air Quality Management Dist.* (2017) 11 Cal.App.5th 1235, 1243 [a plaintiff, in a CEQA challenge to one public agency's approvals for a project, could not also challenge a separate public agency's approvals for the same project]; 1 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont. Ed. Bar 2021 update) § 3.23 ["A lawsuit brought against a responsible agency is limited to the actions that the responsible agency takes in approving the project, and does not extend to actions by the lead agency, or to the adequacy of the lead agency's CEQA review of the project."].)

## DISPOSITION

The judgment is reversed.  The trial court is instructed to enter, consistent with this opinion, a new judgment granting the petition for writ of mandate and specifying those actions the City must take to comply with CEQA.  Appellants are entitled to recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

_____\s\_____,
BLEASE, P. J.

We concur:

_____\s\_____,
ROBIE, J.

_____\s\_____,
DUARTE, J.

Filed 5/11/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| WE ADVOCATE THROUGH ENVIRONMENTAL REVIEW et al., | C091012 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCCVPT20180531) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| CITY OF MOUNT SHASTA et al., | |
| Defendants and Respondents; | |
| CRYSTAL GEYSER WATER COMPANY, | |
| Real Party in Interest and Respondent. | |

THE COURT:

The opinion in the above-entitled matter filed on April 12, 2022, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

1

APPEAL from a judgment denying a petition for writ of mandate of the Superior Court of Siskiyou County, Karen Dixon, Judge.  Reversed in full.

Law Offices of Donald B. Mooney, Donald B. Mooney and Marsha A. Burch for Plaintiffs and Appellants, We Advocate Through Environmental Review, and Winnemem Wintu Tribe.

Kenny & Norine, a Law Corporation, John Sullivan Kenny for Defendants and Respondents, City of Mount Shasta and City Council of City of Mount Shasta.

White Brenner LLP, Barbara Anne Brenner and Kerry A. Fuller for Real Party in Interest and Respondent Crystal Geyser Water Company.


BY THE COURT:


        \s\            ,
BLEASE, P.J.



        \s\            ,
ROBIE, J.



        \s\            ,
DUARTE, J.