[Civ. No. 20471. Third Dist. June 16, 1983.]

RURAL LANDOWNERS ASSOCIATION et al., Plaintiffs and Appellants, v.
CITY COUNCIL OF LODI et al., Defendants and Respondents;
GENIE DEVELOPMENT, INC.,
Real Party in Interest and Respondent.

1014

COUNSEL

Michael H. Remy and Tina A. Thomas for Plaintiffs and Appellants.

Ronald M. Stein, City Attorney, for Defendants and Respondents.

C. M. Sullivan, Jr., for Real Party in Interest and Respondent.

OPINION

CARR, Acting P. J.—The Rural Landowners Association (petitioners) appeal from a judgment denying their petition for mandate and injunctive relief. Petitioners sought mandate to compel respondents Lodi City Council and Lodi City Planning Commission (hereafter collectively the City) to vacate their decisions approving a Final Environmental Impact Report (EIR) for the annexation and development of certain agricultural lands, as well as the general plan amendment, rezoning and tentative map approval for the development. A central issue on appeal is the standard of review to be applied by the trial court under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.), when examining clear errors in the environmental review process, which errors in turn lead to deficiencies in the EIR. We agree with petitioners that the trial court improperly substituted its independent judgment on the evidence for that of the City and accordingly shall reverse the judgment with directions to issue the writ.

FACTS[1]

The properties at issue are known as the Johnson Ranch and the Tandy Ranch. The ranches are situated southeast of the City of Lodi and comprise some 58 acres of prime agricultural land. In September and October 1979, the property owners and the developer (real party in interest, Genie Development) applied to the City for the annexation and prezoning of the property. The City, on behalf of the developer, referred the annexation question to the San Joaquin County Local Agency Formation Commission (LAFCO) for review.[2] Concurrent with the LAFCO review of annexation, the City conducted a review of the general plan amendment, prezoning and tentative map approval necessary for development of the Johnson and Tandy Ranches.

In December the City prepared and circulated the "South East Lodi Draft EIR." The draft EIR discussed the Johnson Ranch general plan amendment and rezoning as part of an area-wide report (244 acres), but did not consider either the Tandy Ranch proposal or the issue of annexation. The City planning commission considered the Johnson and Tandy Ranch development in late January 1980 and took the following actions: (1) approved the general plan amendments and residential prezoning for both parcels; (2) denied the developer's request for commercial prezoning for part of the Johnson Ranch; and (3) approved the

---

[1] City has heretofore moved this court to take judicial notice under Evidence Code section 451, of certain records of the City of Lodi and the County of San Joaquin and of specified state statutes and regulations. That motion is granted.

[2] One of the significant functions of a LAFCO is to " 'review and approve or disapprove' " annexation of territory to local agencies. (Gov. Code, § 54790; *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 274 [119 Cal.Rptr. 215, 531 P.2d 783].)

southeast Lodi final EIR as adequate. Both petitioners and the developers appealed these actions to the city council.

During this same period the LAFCO proceedings on annexation were moving forward, eventually resulting in the approval of both annexations with negative declarations, rather than EIRs. The City then ordered the annexation of both ranches without election. In early March the annexation was essentially complete except for an agreement between the City and county on a division of taxes.

On March 11, 1980, the city council met to hear the appeals on the Johnson-Tandy project and took the following actions: (1) certified the final EIR as complete and adequate; (2) denied petitioner's appeal and approved the general plan amendment and prezoning for both parcels; and (3) granted the developer's appeal, approving the commercial prezoning for the Johnson Ranch. Several days later, the City delivered the final EIR to the Governor's Office of Planning Research (OPR) State Clearinghouse for review and comment.[3]

On May 12, the planning commission met to consider the tentative map for the Johnson-Tandy development. It considered an addendum to the final EIR containing the comments from OPR on the draft EIR. The commission approved the addendum as adequate and approved the Johnson-Tandy tentative map. On May 15, the City filed its notice of determination to carry out the project. The petition which is the subject of this appeal was then filed.

I

 Judicial review of a local agency's decision under CEQA and its accompanying guidelines (see Cal. Admin. Code, tit. 14, § 15000 et seq.), where the agency is required by law to hold hearings and take evidence,[4] is governed by section 21168 of the Public Resources Code.[5] (*Dehne* v. *County of Santa Clara*

---

[3]"The State Clearinghouse in the Office of Planning and Research is responsible for distributing environmental documents to State agencies, departments, boards, and commissions for review and comment." (Cal. Admin. Code, tit. 14, § 15051, subd. (b).)

[4]The actions under consideration by the City (general plan amendment, prezoning, tentative map approval) required public hearings. (Gov. Code, §§ 65351, 66451.3.)

[5]Public Resources Code section 21168 provides: "Any action or proceeding to attack, review, set aside, void or annul a determination, finding, or decision of a public agency, made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency, on the grounds of noncompliance with the provisions of this division shall be in accordance with the provisions of Section 1094.5 of the Code of Civil Procedure. [¶] In any such action, the court shall not exercise its independent judgment on the evidence but shall only determine whether the act or decision is supported by substantial evidence in the light of the whole record."

All further statutory references shall be to the Public Resources Code unless otherwise noted. Further references to the guidelines under Title 14 of the California Administrative Code shall be noted by the word "Guidelines."

(1981) 115 Cal.App.3d 827, 835 [171 Cal.Rptr. 753].) Because section 21168 incorporates the provisions of section 1094.5 of the Code of Civil Procedure,[6] the focus of judicial review is on "(1) whether there is any substantial evidence in light of the whole record to support the decision; and (2) whether the agency making the decision abused its discretion by failing to proceed in the manner required by law." (*Ibid.*)

When the trial court in the present case considered the appropriate scope of review, it formulated a dual standard of review: (1) "as to factual determinations made by the City Council and the Planning Commission this Court would support the determination of those agencies unless it is not supported by substantial evidence. . . . As to matters required to be done by regulations, the Court would apply the standard of requiring (1) a good faith effort at full disclosure and (2) no failure to include information which would cause sufficient prejudice to the public opportunity to present their views that they may be denied due process and might have made a difference to the determination made by the agencies." We are here concerned with the second prong of the trial court's formulated standard of review.

The City conceded it had not proceeded in the manner prescribed by law in that it was required by the guidelines to submit the draft EIR to the state clearinghouse *before* it approved the project (Guidelines §§ 15161.5, 15161.6) and having failed to do so, it was unable to respond to the comments received from OPR and other state agencies before approving the final EIR. (Guidelines § 15146.) In considering these errors, however, the trial court found that the comments from the state agencies, with two exceptions, had been discussed in the final EIR and the city council meeting. The trial court stated "[s]ince no new ideas were raised by the matters set forth in the Addendum, and no action was taken by any City Council members to reconsider any action taken in light of the comments by the State, this Court finds that the omission is of no legal significance, and in light of the good faith effort of the City Council to comply with the EIR guidelines, and the fact that this failure to get timely comments from the state agencies did not prejudice the rights of the public to present their case before the City Council and the Planning Commission." In effect, the trial court posited a "harmless error" standard, concluding that even in the absence of these procedural errors the City would have reached the same result. Petitioners contend this standard of review was incorrect and had a proper standard

---

[6]Code of Civil Procedure section 1094.5 provides in relevant part: "(b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."

of review been applied a different result would have been reached. We agree that the standard of review employed by the trial court was incorrect.

In formulating its standard of review the trial court adopted the City's position that section 21168 requires a two-step analysis: first, has petitioner shown an abuse of discretion as defined; and second, was this abuse prejudicial? The City relies on the language of Code of Civil Procedure section 1094.5 which limits the inquiry to "whether there was any *prejudicial* abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Subd. (b); italics added.) For a definition of prejudice, the City relies on Code of Civil Procedure section 475, which provides in part: "No . . . decision . . . shall be reversed or affected by reason of any error . . . unless it shall appear . . . that by reason of such error . . . the same party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed."[7] The City thus contends that even conceding it abused its discretion by failing to proceed in the manner required by the guidelines, the trial court properly found this abuse of discretion was not prejudicial to either petitioners or the public because the state's comments and the City's responses would not have altered the City's ultimate decision to proceed with the project. While conceding the City's analysis is generally accurate with regard to the usual mandate proceeding under Code of Civil Procedure section 1094.5, we conclude it ignores specific provisions in CEQA and, if followed, would seriously undermine the purpose for which CEQA was enacted.

 CEQA is essentially an environmental full disclosure statute, and the EIR is the method by which this disclosure is made. "In many respects the EIR is the heart of CEQA." (*County of Inyo* v. *Yorty* (1973) 32 Cal.App.3d 795, 810 [108 Cal.Rptr. 377].) The purpose of an EIR "is to provide public agencies and *the public in general* with detailed information about the effect which a proposed project is likely to have on the environment, . . ." (§ 21061; italics added.) We have referred to an EIR as "an environmental 'alarm bell' whose purpose it is to alert the public and its responsible officials to environmental changes before they have reached ecological points of no return." (*Id.*, at p. 810.) This informational purpose cannot be served if the required information is not received and disseminated by the local agency until *after* it has

---

[7]The City urges Code of Civil Procedure section 475 is made applicable by Code of Civil Procedure section 1109 which provides: "Except as otherwise provided in this title, the provisions of part two of this code are applicable to and constitute the rules of practice in the proceedings mentioned in this title." Code of Civil Procedure section 1094.5 is mentioned in "this title" (title I), and Code of Civil Procedure section 475 is found in part two of the Code of Civil Procedure.

reached a decision. For this reason, the guidelines require that the lead agency allow adequate time for the public and other agencies to critically evaluate the draft EIR (Guidelines §§ 15160, 15160.5) and include these comments and recommendations and the responses of the lead agency in the final EIR. (Guidelines § 15146.)

■ The final decision on the merits of the project is, of course, left in the hands of the lead agency. (*San Francisco Ecology Center* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 584, 589 [122 Cal.Rptr. 800].) In passing on questions under CEQA the trial court's duty is to consider the *legal sufficiency* of the steps taken by the local agency, and *not* to consider the validity of the conclusions reached. (*Running Fence Corp.* v. *Superior Court* (1975) 51 Cal.App.3d 400, 431 [124 Cal.Rptr. 339].) The trial court is directed *not* to "exercise its independent judgment on the evidence but shall only determine whether the act or decision is supported by substantial evidence in light of the whole record." (§ 21168.) ■ The trial court in the present case, by determining the comments of the state agencies would not have made any difference to the city council (even though these comments were never brought before the council), exercised its independent judgment on the value of this evidence in contravention of the statute.

By focusing its consideration of prejudice on the *result,* the trial court ignored the prejudice to the public caused by the unavailability of the comments from the state agencies at the time of the March 11 hearing. It was impossible for the trial court to know what effect these expert criticisms would have had on public comments, presentations and official reaction. Its independent judgment that the information was of "no legal significance" amounts to a *"post hoc rationalization"* of a decision already made, a practice which the courts have roundly condemned. (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 81 [118 Cal.Rptr. 34, 529 P.2d 66].) In failing to submit the draft EIR to the state clearinghouse as required and preparing the addendum EIR *after* the project had been approved, the City concededly proceeded in a manner contrary to the requirements of law. "This failure cannot be excused on the theory that the council might have approved the . . . project anyway; '[t]o permit an agency to ignore its duties . . . with impunity because we have serious doubts that its ultimate decision will be affected by compliance would subvert the very purpose of the Act.' " (*Ibid.*)

■ We recognize the guidelines are subject to a construction of reasonableness so that the court does not impose unreasonable extremes or intrude into the area of discretion as to the choice of action to be taken. (*Karlson* v. *City of Camarillo* (1980) 100 Cal.App.3d 789, 805 [161 Cal.Rptr. 260]; *Residents Ad Hoc Stadium Com.* v. *Board of Trustees* (1979) 89 Cal.App.3d 274, 287 [152 Cal.Rptr. 585].) In both *Karlson* and *Residents Ad Hoc Stadium Com.,*

however, the central issue of concern was whether the local agency had satisfied the requirement of examining alternatives to a project. (Guidelines § 15143, subd. (d).) In such a situation "[a]bsolute perfection is not required" or obtainable, as there are endless alternatives to a project. (*Residents Ad Hoc Stadium Com.* v. *Board of Trustees, supra,* 89 Cal.App.3d at p. 287.) A good faith effort to comply with a statute resulting in the production of information is *not* the same, however, as an absolute failure to comply resulting in the *omission* of relevant information. While the guidelines allow for flexibility of action within their outlines, they are not to be ignored. They are entitled to great weight and should be respected by the courts unless they are clearly erroneous or unauthorized. (*City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal.App.3d 521, 530 [160 Cal.Rptr. 907].) In discussing the requirement that the final EIR contain the comments received and the lead agency's responses (Guidelines §§ 15146, subd. (a)(2), (b); 15027, subd. (b)), the Fifth District stated "the [city] must describe the disposition of each of the significant environmental issues raised and must particularly set forth in detail the reasons why the particular comments and objections were rejected and why the [City] considered the development of the project to be of overriding importance." (*People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 841 [115 Cal.Rptr. 67].) "Moreover, where comments from responsible experts or sister agencies disclose new or conflicting data or opinions that cause concern that the agency may not have fully evaluated the project and its alternatives, these comments may not simply be ignored. *There must be good faith, reasoned analysis in response.* (Italics added.) [Citations.] *Only by requiring the County to fully comply with the letter of the law can a subversion of the important public purposes of CEQA be avoided,* and only by this process will the public be able to determine the environmental and economic values of their elected and appointed officials, thus allowing for appropriate action come election day should a majority of the voters disagree." (*Id.,* at p. 842; italics added.) The trial court found that of all the comments received from the state clearinghouse "each of these *except for solid waste management and transportation were discussed in the environmental impact study and the City Council meeting.*" The trial court therefore expressly found at least two areas raised by the comments from OPR were neither discussed in the final EIR nor presented to the city council.

Were we to accept respondent's position that a clear abuse of discretion is only prejudicial where it can be shown the result would have been different in the absence of the error, we would allow just such a subversion of the purposes of CEQA. Agencies could avoid compliance with various provisions of the law and argue that compliance would not have changed their decision. Trial courts would be obliged to evaluate the omitted information and independently determine its value. This prospect has led other courts to recognize that a failure to proceed in the manner prescribed by law may alone be a prejudicial abuse of discretion. (*Cleary* v. *County of Stanislaus* (1981) 118 Cal.App.3d 348, 352

[173 Cal.Rptr. 390]; *People* v. *County of Kern, supra,* 39 Cal.App.3d at p. 840.)[8] ■ We conclude that where that failure to comply with the law results in a subversion of the purposes of CEQA by omitting information from the environmental review process, the error is prejudicial. The trial court may not exercise its independent judgment on the omitted material by determining whether the ultimate decision of the lead agency would have been affected had the law been followed. The decision is for the discretion of the agency, and not the courts.

## II

We now consider the specific deficiencies in the EIR advanced by petitioners.

The EIR must address the comments of OPR and the other state agencies. In particular, the City must formulate adequate responses to these comments. (Guidelines § 15146.) ■ We agree with petitioners, and the City concedes, that OPR's comment regarding "infill" development was not adequately answered.[9] OPR's comment raised specific concerns which the City answered in a nonspecific and general way. The City's response does not evidence " ' "a good faith, reasoned analysis in response," ' " which must be remedied. (*Cleary* v. *County of Stanislaus, supra,* 118 Cal.App.3d at p. 358.)

When discussing certain identified significant impacts on the environment (increased vehicle emissions, construction activities, increased population, particularly in school-aged children), the City Council's Findings and the EIR stated these impacts would be "partially mitigated." The trial court found "partial mitigation" meant the same as "mitigation" although "the mitigation is slight as to the preservation of Tokay vineyards as long as possible." ■ A finding of "partial mitigation" does not comport with the purpose of CEQA to "avoid or substantially lessen such significant effects" on the environment. (§ 21002.) We agree with petitioners that the finding of "partial" mitigation is of little value to someone who must decide whether certain recognized significant impacts have been avoided or substantially lessened to an acceptable level.

---

[8]"The standard for review of the County's action is whether it prejudicially abused its discretion. *Such abuse* is established if the County has not proceeded in a manner required by law . . . ." (*Cleary* v. *County of Stanislaus, supra,* 118 Cal.App.3d at p. 352; italics added.)

[9]The comment from OPR stated: "Infill development wherever possible and development at higher densities within the urban growth limits could lessen the increasing pressure on agricultural lands around the city." The City's response to this comment was in part: "There are two types of 'infill' which might be considered in the City of Lodi. The first is development of vacant parcels which are already in the City and the second is development or redevelopment at higher densities." The response then goes on to discuss the problems of increasing density, but says nothing about the availability of vacant land or the feasibility of developing this land before developing outlying areas.

(Guidelines §§ 15088, 15089.)[10] "Partially" mitigated is sufficiently ambiguous to allow for a range of meaning from almost unaffected to almost eliminated.[11] ██ Administrative findings are deemed adequate "if they are sufficient to apprise interested parties and the courts of the bases for the administrative action." (*San Francisco Ecology Center* v. *City and County of San Francisco, supra,* 48 Cal.App.3d at p. 596.) On remand, the City would be well advised to specify whether or not the identified significant impacts have been avoided or substantially lessened. To advise interested parties, in other words, exactly how "partial" are the mitigation measures.

██ Petitioners' final contention is that the EIR failed to consider the pending annexation of the area containing the Johnson and Tandy Ranches.[12] The City urges such consideration was unnecessary as LAFCO was the proper lead agency on the annexation project and it fulfilled its responsibilities with a negative declaration which petitioners did not challenge. The City's argument erroneously assumes that the annexation and the Johnson-Tandy development are entirely unrelated projects. They are clearly interconnected, as the proposed development will be annexed to the city, and to adopt the City's position would defeat CEQA's mandate "that environmental considerations do not become submerged by chopping a large project into many little ones—each with a minimal potential impact on the environment—which cumulatively may have disastrous consequences." (*Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 283-284 [118 Cal.Rptr. 249, 529 P.2d 1017].) While the project which LAFCO apparently considered, the simple adjustment of the city

---

[10]Section 15088 of the guidelines states in part: "(d) A public agency shall not approve or carry out a project as proposed unless the significant environmental effects have been reduced to an acceptable level. [¶] (e) As used in this Section, the term 'acceptable level' means that: [¶] (1) All significant environmental effects that can feasibly be avoided have been eliminated or substantially lessened as determined through findings as described in Subsection (1), and [¶] (2) Any remaining unavoidable significant effects have been found acceptable under Section 15089." Section 15089 of the guidelines requires a "statement of overriding considerations" where significant impacts are identified and mitigation is not feasible.

[11]For example, the EIR states the impact of additional students on the Lodi Unified School District can be "partially mitigated by the payment of the residential 'bedroom fee.'" OPR commented that reliance on such a bedroom tax did not appear to be a viable mitigation measure in light of an Attorney General opinion stating that such taxes are "special taxes" within the meaning of Proposition 13 and therefore require a two-thirds vote of the electorate. The City's response did not examine this comment in any meaningful way. The City stated: "The impact of growth on the Lodi Unified School District is clearly cumulative, with the greatest impact the result of development in the North Stockton area. A more thorough analysis of school impact, and alternative mitigation measures are beyond the scope of this EIR."

[12]It is noteworthy that the final EIR does not even mention the Tandy Ranch development. In the addendum, the City states that development of the Tandy Ranch "is covered in the discussion on development of the remaining area, outside of the two cited projects [Johnson and Evans Ranches]." The EIR *simply states* there are "no specific development proposals" for this area, and it is anticipated it will be developed in residential uses consistent with the general plan. On remand, the City will have an opportunity to discuss the specific Tandy proposal in the EIR and why, if the area was to be developed consistently with the general plan, a general plan amendment was necessary for the Tandy development.

boundaries, may not have any impact on the environment, it is difficult to perceive how the development and annexation of a large commercial and residential project will not. Responsibility for a project cannot be avoided merely by limiting the title or description of the project. "An accurate, stable and finite project description is the *sine qua non* of an informative and legally sufficient EIR." (*County of Inyo* v. *City of Los Angeles* (1977) 71 Cal.App.3d 185, 193 [139 Cal.Rptr. 396].)

Since LAFCO apparently considered only annexation, and not development, *some* responsible agency must consider the combined effect of the interrelated projects. The City was the lead agency on the development and a responsible agency on the annexation, as it retained final discretionary authority over the annexation. (§ 21069; *Scuri* v. *Board of Supervisors* (1982) 134 Cal.App.3d 400, 404 [185 Cal.Rptr. 18].) Had LAFCO prepared an EIR, the City could have used it, suitably supplemented, as one basis for its decision-making process. (*Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d at p. 286.) But as the City was now considering a significantly different project than that considered by LAFCO, annexation *plus* development, the City, as a responsible agency, was required to prepare a subsequent or supplemental EIR addressing the consequences of annexation. (Guidelines §§ 15067, 15067.5.) On remand, the City will have the opportunity to do this.

We recognize the ultimate outcome in this case may be substantially similar to the result reached herein by the trial court. We conclude, however, that neither the prescience of the trial court nor the economic hardships of delay to the applicant can justify the approval of the project without compliance with the law. (*People* v. *County of Kern* (1976) 62 Cal.App.3d 761, 776 [133 Cal.Rptr. 389].) Accordingly, the judgment is reversed with directions to issue the writ of mandate as prayed.

Sparks, J., and Sims, J., concurred.