[No. C028650. Third Dist. Feb. 26, 1999.]

FALL RIVER WILD TROUT FOUNDATION et al., Plaintiffs and Respondents, v.
COUNTY OF SHASTA et al., Defendants and Appellants;
FALL RIVER RANCHES, Real Party in Interest and Appellant.

484

## Counsel

Law Offices of Paul N. McCloskey, Jr., Wagstaffe & Jellins, Paul N. McCloskey, Jr.; and Charles E. McClung, Jr., for Defendants and Appellants and for Real Party in Interest and Appellant.

Law Offices of McHugh & Chen, William D. McHugh and Cammie W. Chen for Plaintiffs and Respondents.

## Opinion

**CALLAHAN, J.**—Plaintiffs Fall River Wild Trout Foundation, Michael Fitzwater, and W. R. Ranches LLC filed a petition for writ of mandate in Shasta County Superior Court.[1] They sought to set aside the Shasta County Board of Supervisors' adoption of a mitigated negative declaration and zoning amendment to permit development along Fall River by real party in interest Fall River Ranches. Shasta County and its board of supervisors (collectively County) and Fall River Ranches appeal from the order granting plaintiffs' petition.

---

[1] The petition alleges that "Petitioner MICHAEL FITZWATER was and now is an owner of a parcel of real property along Fall River, whose interest in the ecology of Fall River is affected by the ordinance passed by [defendants]. FALL RIVER WILD TROUT FOUNDATION is a non-profit foundation whose primary purpose is to protect the Fall River wild trout. W. R. RANCHES LLC dba FISH CAMP operates a fishing club on Fall River in the immediate vicinity of the proposed project."

The County and Fall River Ranches raise two issues on appeal: (1) whether the court erred in ruling plaintiffs were excused from exhausting their administrative remedies by the County's failure to give notice to a trustee agency under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.);[2] and (2) whether the County's failure to send a copy of the mitigated negative declaration to a trustee agency was a prejudicial abuse of discretion or merely harmless error. We affirm the order.

I

*The CEQA Environmental Review Process*

*Gentry* v. *City of Murrieta* (1995) 36 Cal.App.4th 1359 [43 Cal.Rptr.2d 170] (*Gentry*) describes the three-stage environmental review process under CEQA. "First, the agency must determine whether the particular activity is covered by CEQA. ([Cal. Code Regs., tit. 14], § 15002, subd. (k)(1) [Cal. Code Regs., tit. 14, § 15000 et seq., cited hereafter as Guidelines].) . . . .

"Second, the agency must determine whether the project may have significant environmental effects. (Guidelines, § 15002, subd. (k)(2).) Except when the project clearly *will* have such effects, the agency must conduct an initial study to assist it in making this determination. (Guidelines, §§ 15063, subds. (a), (c)(1), 15365.) During the initial study, the agency must consult with certain other interested public agencies. (§ 21080.3, subd. (a); Guidelines, § 15063, subd. (g).)

"Based on the initial study, the agency may find no substantial evidence that the project may have a significant effect on the environment. In that case, in lieu of an EIR [environmental impact report], it may adopt a statement that the project will have no significant environmental effect. Such a statement is called a negative declaration. (§§ 21064, 21080, subd. (c); Guidelines, §§ 15063, subd. (b)(2), 15064, subd. (g)(2), 15070, subd. (a), 15371.)

"Similarly, the agency may find that, although the project as originally proposed might have had potentially significant environmental effects, the project has been modified by measures which mitigate these environmental effects, and there is no substantial evidence that the project, as modified, may have a significant effect on the environment. In that case, in lieu of an EIR, the agency may adopt a 'mitigated' negative declaration. (Guidelines, § 15070, subd. (b).)

---

[2]All undesignated statutory references are to the Public Resources Code.

"Before an agency adopts either a negative declaration or a mitigated negative declaration, however, it must give public notice of its intent to do so. (§ 21092; Guidelines, § 15072.) It must make the proposed negative declaration available to the public and to certain other interested public agencies for a specified period for review and comment. (Guidelines, § 15073.) It then must consider the comments it receives in determining whether to adopt a negative declaration. (Guidelines, § 15074, subd. (b).)

"If the administrative record before the agency contains substantial evidence that the project may have a significant effect on the environment, [the agency] cannot adopt a negative declaration; it must go [on to] the third stage of the CEQA process: preparation and certification of an EIR. (§§ 21100, 21151; Guidelines, §§ 15002, subd. (k)(3), 15063, subd. (b)(1), 15064, subds. (a)(1), (g)(1), 15362.)" (*Gentry, supra,* 36 Cal.App.4th at pp. 1371-1372, original italics.)

## II

### *Factual and Procedural Background*

The County approved rezoning of the project site in 1987 based on a plan to develop 14 residential sites along Fall River. Nearly 10 years later, Fall River Ranches sought amendment of the zoning ordinance to add more residential units after it acquired 150 acres in the northeast corner of the project.

The Shasta County Planning Commission solicited review and comment from "interested/affected agencies" during the fall of 1995. It also published notice of its December 19, 1996, hearing on the project. The County concedes for purposes of appellate argument that it did not send a copy of the mitigated negative declaration to the Department of Fish and Game.

The planning commission recommended that the board of supervisors approve the proposed amendment, and made the following environmental findings:

"A. An Initial Study has been conducted by the Shasta County Department of Resource Management, Planning Division, to evaluate the potential for significant adverse environmental effects and there is no substantial evidence in light of the whole record before the agency that the projects as mitigated may have a significant adverse impact on the environment.

"B. A mitigated negative declaration has been prepared pursuant to [CEQA]. . . .

"

"D. There is evidence before the approving authority that the proposed projects may have the potential for an adverse effect on wildlife resources or upon the habitat on which the wildlife depends."

The board of supervisors adopted the amended zoning ordinance and mitigated negative declaration in January 1997.

Plaintiffs' petition for writ of mandate challenged the County's action on procedural and substantive grounds. Specifically, plaintiffs alleged that the County failed to proceed in the manner prescribed by law regarding notice under CEQA and the Guidelines (Cal. Code Regs., tit. 14, § 15000 et seq. (Guidelines)). They asserted: (1) the County failed to send notice of its intent to adopt the mitigated negative declaration to the Department of Fish and Game, a trustee agency, and to the State Clearinghouse; (2) the description of the location of the project contained in the published notice was ambiguous and misleading; and (3) the County failed to give notice to the occupants of contiguous parcels.

Plaintiffs also attacked the decision to adopt the mitigated negative declaration on the substantive ground that there was substantial evidence in the administrative record to support a fair argument the project might have significant adverse effects on the environment. Based on this evidence, plaintiffs argued the County should have prepared an environmental impact report rather than a mitigated negative declaration.

The County responded that plaintiffs "failed to exhaust their administrative remedies in that public hearings were held by the Planning Commission and Board [of Supervisors] and neither [plaintiffs], their members, any person representing them nor any person at all presented orally or in writing the grounds alleged in the Petition as constituting abuse of discretion by the [County] in enacting the ordinance and approving Real Party in Interest's Tract Map either during the public comment period established by CEQA or prior to the close of said public hearings." The County also contended there was no substantial evidence to support a fair argument regarding the inadequacy of the mitigated negative declaration.

The court initially denied plaintiffs' petition on grounds the County provided proper notice, and plaintiffs failed to exhaust their administrative remedies. Following the hearing on plaintiffs' motion for reconsideration, the court vacated its earlier order and granted the petition. Relying on *Gentry, supra,* 36 Cal.App.4th 1359, the court set aside adoption of the

mitigated negative declaration and zoning amendment due to the County's failure to give notice to all trustee agencies as required by CEQA. With respect to the requirement plaintiffs exhaust administrative remedies, the court ruled the County's failure to give notice to the Department of Fish and Game and State Clearinghouse resulted in the "evaporation of the prohibitions created by Public Resources Code § 21177." This appeal ensued.

## III

### *Standard of Judicial Review*

■ The County's amendment of its zoning ordinance to allow development of Fall River Ranches' property was a legislative act. (*William S. Hart Union High School Dist.* v. *Regional Planning Com.* (1991) 226 Cal.App.3d 1612, 1625 [277 Cal.Rptr. 645].) Accordingly, the trial court's review of the County's actions was governed by section 21168.5. (*Western States Petroleum Assn.* v. *Superior Court* (1995) 9 Cal.4th 559, 567-568 [38 Cal.Rptr.2d 139, 888 P.2d 1268].)

Section 21168.5 provides: "In any action or proceeding, other than an action or proceeding under Section 21168, to attack, review, set aside, void or annul a determination, finding, or decision of a public agency on the grounds of noncompliance with this division, the inquiry shall extend only to whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." However, "[t]he interpretation and applicability of a statute is a question of law requiring an independent determination by the reviewing court." (*East Peninsula Ed. Council, Inc.* v. *Palos Verdes Peninsula Unified School Dist.* (1989) 210 Cal.App.3d 155, 165 [258 Cal.Rptr. 147].)

The appellate court's task is the same as that of the trial court—to review the administrative record independently to determine whether the agency complied with procedures required by law. (*Gentry, supra,* 36 Cal.App.4th at pp. 1375-1376.)

## IV

### *Exhaustion of Administrative Remedies*

■ "The doctrine of exhaustion of administrative remedies is well settled: it is commonly held that if an administrative remedy is provided by statute or ordinance, a litigant must show that he invoked and exhausted the

remedy before he may obtain judicial review of the administrative action taken." (*Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105, 111 [122 Cal.Rptr. 282]; *California Aviation Council* v. *County of Amador* (1988) 200 Cal.App.3d 337, 340-341 [246 Cal.Rptr. 110].)

In 1984 the Legislature codified the exhaustion doctrine in CEQA cases in section 21177. (Stats. 1984, ch. 1514, § 14, pp. 5344-5345.) That statute now reads in part: "No person shall maintain an action or proceeding unless that person objected to the approval of the project orally or in writing during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination." (§ 21177, subd. (b).)

Section 21177 also codified some exceptions to the exhaustion of remedies requirement, including the following: "(e) This section does not apply to any alleged grounds for noncompliance with this division for which there was no public hearing or other opportunity for members of the public to raise those objections orally or in writing prior to the approval of the project, *or if the public agency failed to give the notice required by law.*" (Italics added.)

In this appeal, the County and Fall River Ranches challenge the trial court's ruling that section 21177, subdivision (e) "evaporated" the requirement plaintiffs exhaust their administrative remedies. We question whether the right of a person to appear in administrative proceedings leading to the adoption of a mitigated negative declaration is an administrative remedy which must be exhausted. "Prior to the adoption of a [mitigated] negative declaration under the scheme here in issue there is no wrong to be remediated." (*California Aviation Counsel* v. *County of Amador, supra,* 200 Cal.App.3d at p. 348 (conc. opn. of Blease, J.).) However, even if the exhaustion of remedies doctrine applies in the circumstances of these proceedings, we agree with the trial court's determination plaintiffs are excused from the requirement by the County's admitted failure to give notice to the Department of Fish and Game.

The argument offered by the County and Fall River Ranches focuses on the meaning of the term "notice required by law" found in section 21177, subdivision (e). They contend the notice specified in that section "is intended to be notice to the *public* so that members of the public can appear and be heard in the public proceedings." (Italics added.) They argue the court erred in interpreting the notice requirements broadly to include "subsequent transmittal of proposed negative declarations to *public agencies* under the consultation provisions of the CEQA Guidelines." (Italics added.)

Our resolution in favor of the trial court's order turns on the construction of the statutory language. ■ The objective of statutory construction is to ascertain and effectuate legislative intent. To determine intent, courts look first to the language of the statute, giving effect to its plain meaning. (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209 [271 Cal.Rptr. 191, 793 P.2d 524].) In addition, the statutory provision must be given " ' "a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical, and that will lead to a wise policy rather than to mischief or absurdity." . . .' " (*City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 [106 Cal.Rptr. 569], citation omitted.) ■ Moreover, courts interpret CEQA broadly " 'in order to afford the fullest protection to the environment consistent with the reasonable scope of the statutory language. . . .' " (*Kane* v. *Redevelopment Agency* (1986) 179 Cal.App.3d 899, 905 [224 Cal.Rptr. 922], citations omitted.)

■ We also consider the Guidelines which the Legislature expressly authorized the Secretary of the Resources Agency to develop as an aid to agency implementation of CEQA. (§ 21083; *City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal.App.3d 521, 528-529 [160 Cal.Rptr. 907].) These Guidelines "are entitled to great weight and should be respected by the courts unless they are clearly erroneous or unauthorized." (*Rural Landowners Assn.* v. *City Council* (1983) 143 Cal.App.3d 1013, 1022 [192 Cal.Rptr. 325].)

■ The Guidelines specifically state that a lead agency such as the County "shall provide a notice of intent to adopt a . . . mitigated negative declaration to the *public*, responsible agencies, *trustee agencies*, and the county clerk of each county within which the proposed project is located, sufficiently prior to adoption by the lead agency of the . . . mitigated negative declaration to allow the public and agencies the review period provided under Section 15105." (Guidelines, § 15072, subd. (a), italics added.) The Department of Fish and Game is a "trustee agency" under CEQA. (Fish & G. Code, § 1802; Guidelines, § 15386.) The Guidelines also provide for trustee agency participation in public review of a mitigated negative declaration. (Guidelines, § 15073.)

Contrary to the express language of the Guidelines, the County and Fall River Ranches attempt to portray notice to trustee agencies of the intent to adopt a mitigated negative declaration as separate from the public review process. Their argument leads to the absurd conclusion that "notice required by law" under section 21177, subdivision (e) includes notice to the public

under sections 15072 and 15073 of the Guidelines, but excludes notice to trustee agencies required in the same sections. The plain, commonsense reading of section 21177, subdivision (e) supports the conclusion notice to both the public and the trustee agencies is "required by law" as set forth in the Guidelines. Our broad reading of the statutory language encourages public action to ensure relevant information is considered by local agencies at all stages in the CEQA review process.

V

*Prejudicial Abuse of Discretion Under CEQA*

The second issue in this appeal is whether the court erred in setting aside adoption of the mitigated negative declaration and zoning amendment under *Gentry* on grounds the County abused its discretion in failing to give notice to trustee agencies. The County and Fall River Ranches cite the trial court's vacated ruling in which it found "no substantial evidence in the Administrative Record to support a fair argument that the approval of the zoning and tentative subdivision map will have a significant adverse effect on the Fall River environment." They distinguish *Gentry*, where the appellate court found substantial evidence to support a fair argument the project would have significant environmental effects. (*Gentry*, *supra*, 36 Cal.App.4th at p. 1367.) They emphasize that although the *Gentry* court concluded the City of Murrieta "abused its discretion by failing to send a copy of its proposed negative declaration to the Department of Fish and Game and to the State Clearinghouse before it adopted the negative declaration," it set aside the negative declaration for other reasons. In *Gentry*, the court declined to rule "whether this abuse of discretion was so prejudicial that [it] would be required to reverse the judgment below on this ground alone." (*Id.* at p. 1389.) Relying on the trial court's vacated findings, the County and Fall River Ranches maintain that no prejudice resulted from the County's abuse of discretion. We reject this analysis of prejudice under CEQA.

We concluded in *Rural Landowners Assn.* v. *City Council, supra,* 143 Cal.App.3d at page 1023 that the error is prejudicial where failure to comply with the law results in "a subversion of the purposes of CEQA by omitting information from the environmental review process, . . . ." A year later, the Legislature added section 21005, which states, in part: "[N]oncompliance with the information disclosure provisions of [CEQA] which precludes relevant information from being presented to the public agency, or noncompliance with substantive requirements of [CEQA], may constitute a prejudicial abuse of discretion within the meaning of Section[] . . . 21168.5,

regardless of whether a different outcome would have resulted if the public agency had complied with those provisions." (§ 21005, subd. (a); Stats. 1984, ch. 1514, § 3, p. 5339.) At the same time, "there is no presumption that error is prejudicial." (§ 21005, subd. (b).)

Several appellate decisions guide our application of section 21105. The Supreme Court described what constitutes prejudicial abuse of discretion in *Sierra Club* v. *State Bd. of Forestry* (1994) 7 Cal.4th 1215 [32 Cal.Rptr.2d 19, 876 P.2d 505]. "Only if the manner in which an agency failed to follow the law is shown to be prejudicial, or is presumptively prejudicial, as when [an agency] fails to comply with mandatory procedures, must the decision be set aside." (*Id.* at p. 1236.) Thus, a prejudicial abuse of discretion occurs if, for example, "the failure to include relevant information [in an EIR (environmental impact report)] precludes informed decisionmaking and informed public participation, thereby thwarting the statutory goals of the EIR process." (*Kings County Farm Bureau* v. *City of Hanford* (1990) 221 Cal.App.3d 692, 712 [270 Cal.Rptr. 650].) The County argues the discretionary word "may" and the statement "there is no presumption that error is prejudicial" means the plaintiffs must adduce evidence of a specific prejudice flowing from the failure to give the required notice. We disagree. The addition of the discretionary language does no more than recognize there are circumstances in which the failure to give notice would not be prejudicial. For example, if the Department of Fish and Game had appeared at the first hearing in this case and voiced no concerns it could be said the failure to give notice of the succeeding negative declaration was not prejudicial.[3] But where the lack of notice, as here, results in a failure to elicit a response to the negative declaration, the prejudice is manifest. This conclusion is supported by decisions antedating the addition of section 21005.

In *Rural Landowners Assn.* v. *City Council, supra,* 143 Cal.App.3d 1013, we rejected a harmless error argument similar to the argument offered by the County and Fall River Ranches in this appeal—that the City of Lodi would have reached the same result even in the absence of procedural errors which included the failure to submit a copy of the draft environmental impact report to the State Clearinghouse. (*Id.* at p. 1019.) We concluded that the error is prejudicial "where that failure to comply with the law results in a subversion of the purposes of CEQA by omitting information from the environmental review process, . . . ." (*Id.* at p. 1023.) We explained that "[b]y focusing its consideration of prejudice on the *result*, the trial court

---

[3]The failure of the Department of Fish and Game to appear following the first hearing does not imply the department had no objections to a *negative declaration*. That implication is foreclosed by the notice requirement at issue in this case.

ignored the prejudice to the public caused by the unavailability of the comments from the state agencies at the time of the [hearing on the parties' appeals of local agency action]. It was impossible for the trial court to know what effect these expert criticisms would have had on public comments, presentations and official reaction." (*Id.* at p. 1021, original italics.)

The same considerations apply in our analysis under section 21005. The County's failure to send a copy of the mitigated negative declaration to the Department of Fish and Game, a trustee agency, deprived the County of information necessary to informed decisionmaking and informed public participation. (*Kings County Farm Bureau* v. *City of Hanford, supra*, 221 Cal.App.3d at p. 712.) Based on the foregoing, we conclude the trial court properly set aside the County's adoption of the mitigated negative declaration and zoning amendment.

DISPOSITION

The order is affirmed.

Blease, Acting P. J., and Sims, J., concurred.