[No. C040450. Third Dist. Mar. 7, 2003.]

NEIGHBORS OF CAVITT RANCH et al., Plaintiffs and Appellants, v.
COUNTY OF PLACER, Defendant and Respondent;
BAYSIDE COVENANT CHURCH, Real Party in Interest and
Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976, this opinion is certified for publication with the exception of parts II. B., C. and D., III, IV, and V of the Discussion.

**COUNSEL**

Farmer, Murphy, Smith & Alliston, George E. Murphy; Law Offices of William D. Kopper and William D. Kopper for Plaintiffs and Appellants.

Anthony La Bouff, County Counsel, and Valerie D. Flood, Deputy County Counsel, for Defendant and Respondent.

Morrison & Foerster and J. Michael Stusiak for Real Party in Interest and Respondent.

## OPINION

**CALLAHAN, J.**—Defendant County of Placer (County) certified a final environmental impact report (FEIR) and approved a conditional use permit (CUP) allowing real party in interest Bayside Covenant Church (Bayside) to proceed with construction of church facilities on 34.6 acres of unimproved property between Sierra College Boulevard and Cavitt-Stallman Road in South Placer County. The Bayside construction was one of two undertakings reviewed in the draft environmental impact reports (DEIR's) prepared by the County. Neighbors of Cavitt Ranch, an association composed of nearby property owners, and Steven H. Gurnee, an individual property owner (collectively Neighbors), sought relief in superior court. The court denied their petition for writ of mandate.

On appeal, the Neighbors argue County did not comply with procedural requirements of the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) (CEQA).[1] Central to the procedural challenge is the Neighbors' claim CEQA required County to prepare separate environmental impact reports (EIR's) for Bayside's proposed construction and a residential development promoted by Elliott Homes, Inc. (Elliott), the former owner of both parcels. Alternatively, the Neighbors argue County's decision to approve the Bayside project is not supported by substantial evidence. They also maintain the project's inconsistencies with the Granite Bay Community Plan (GBCP) and the Placer County General Plan (General Plan) voided project approval.

We affirm the judgment for reasons we shall explain.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 1997, Elliott submitted its initial project application to the planning department, and sought approval to develop 209.3 acres of grazing land the company owned in South Placer County. The project had two

---

[1] Undesignated statutory references are to the Public Resources Code. The CEQA Guidelines, set forth in California Code of Regulations, title 14, section 15000 et seq., are cited as "Guidelines."

elements. The first was Cavitt Ranch Estates, 31 residential/agricultural lots on the northern 174.7 acres. The second, Bayside Covenant Church, involved development of church facilities on the southern 34.6 acres.

Environmental review proceeded apace. County completed the initial study on September 5, 1997, and determined that an EIR would be required. The planning department, as lead agency, forwarded notice of preparation of a DEIR to the state clearinghouse, designated agencies, and interested parties on December 3, 1997. That document described the project as "a proposal for development of 31 single-family residential-agricultural lots on 174.7 acres and development of a church on 34.6 acres." The 30-day public review period began on December 3, 1997.

Comments received from various agencies and nearby residents during public review of the Cavitt Ranch Estates and Bayside Covenant Church project were addressed in "Administrative Draft No. 2 Environmental Impact Report" dated December 3, 1998, and the "[Draft] Environmental Impact Report" dated March 23, 1999 (collectively the CRE/BCC DEIR's). These documents explained that the Bayside portion of the project would be constructed in two phases "allowing development to coincide with growth of the congregation." Phase 1 included three buildings totaling 71,000 square feet, 926 parking spaces, driveways, and landscaping. Phase 2 consisted of three additional buildings totaling 102,000 square feet and 789 parking spaces. The 3,500-seat auditorium proposed in phase 2 would be used primarily for Sunday services. The CRE/BCC DEIR's identified areas of controversy relating to the Bayside portion of the project, including concerns that "the proposed church [was] too large for the location," that it "[would] generate too much traffic on local roadways," and it "conflict[ed] with GBCP policies." County published a notice of availability of the CRE/BCC DEIR's for public review on April 9, 1999.

County produced the final environmental impact report for both project elements on June 6, 2000 (the CRE/BCC FEIR). It issued a notice of public hearing before the planning commission on July 13, 2000, regarding the CRE/BCC FEIR, General Plan amendment, and rezoning for Cavitt Ranch Estates. A corrected notice of public hearing assigned a new time for the July 13 hearing. It also included the following statement: "THIS HEARING WILL BE TO CONSIDER CERTIFICATION OF AN ENVIRONMENTAL DOCUMENT AND APPROVAL OF LAND USE ENTITLEMENTS ONLY FOR THE PROPOSED CAVITT RANCH ESTATES SUBDIVISION. COMMENTS AT THIS HEARING SHOULD BE RESTRICTED TO ISSUES PERTAINING ONLY TO THE CAVITT RANCH ESTATES PROJECT." (Underscoring in original.) The notice continued: "A separate

public hearing will be held at a future date to consider a separate environmental document for the Bayside Covenant Church and to consider the land use entitlement application for the Bayside Covenant Church project. The hearing for the Bayside Covenant Church will be duly noticed. The public will be provided with a full opportunity to submit comments pertaining to the Bayside Covenant Church prior to and at the hearing for that project."

The planning commission approved the Cavitt Ranch Estates development at the July 13, 2000, meeting, but denied Elliott's request for a variance. The planning commission's CEQA findings of fact and statement of overriding considerations dated July 2000 explained how County provided for separate consideration and approval of the two elements of Elliott's original project: "In the original version of the Draft EIR for the Project, the County simultaneously analyzed a separate project then under common ownership: the Bayside Covenant Church Project, which Elliott Homes has since sold to the Church proponents. Although the Final EIR [CRE/BCC FEIR], consisting mainly of comments and responses, continues to address both projects, the County has reissued a single Draft EIR [CRE DEIR] to address only the Cavitt Ranch project. This 'new' document is not really new, but rather largely consists of those portions of the original Draft EIR addressing only the Cavitt Ranch Estates project (with some additional information on project alternatives). The County took this step to allow the two projects to be processed and considered separately, and to emphasize to the public that, though they were formerly under common ownership, and thus were related in that sense, the County has the power and authority to address them separately."

Elliott appealed the denial to the board of supervisors. Following a public hearing on September 19, 2000, the board approved Cavitt Ranch Estates with the variance, and certified the Cavitt Ranch Estates portion of the CRE/BCC FEIR.

Meanwhile, on August 16, 2000, Bayside filed its separate project application and request for a CUP as owner of the 34.6-acre parcel where the church facilities were to be built. County issued what it called "Reprinted Environmental Impact Report [for] Bayside Covenant Church" (BCC DEIR) on September 22, 2000. The introduction to the BCC DEIR explained: "This document is a reprint of the Draft EIR prepared and circulated for the Cavitt Ranch Estates and Bayside Covenant Church project. This document includes corrections and clarifications presented in the Final EIR. In response to public comments, Placer County has decided to consider the major components of the proposed project individually, i.e., the County will consider the proposed Bayside Covenant Church separately from the proposed

Cavitt Ranch Estates residential subdivision. The adequacy of the CEQA environmental analysis as it pertains to each proposed development will be considered in conjunction with that project. Accordingly, this reprinted document only includes the portion of the original Draft EIR that pertains to the Bayside Covenant Church project. A similar environmental document is being prepared for the Cavitt Ranch Estates project." County indicated it would "accept written comments on this Draft EIR during a CEQA mandated 45-day public review period."

County noticed the planning commission's October 11, 2000, public hearing on Bayside's part of the CRE/BCC FEIR and CUP. A memo from the planning department's review committee explained the revised procedure to the planning commission: "A Draft EIR was prepared for a joint development project, which included the recently-approved Cavitt Ranch Estates rural subdivision, located north of this site, and the proposed church site. Originally the County accepted the application as one development project since at the time, they were both under a single ownership and nearly contiguous, excepting for a single parcel (4± acres) that separated the two projects. However, the project site was later sold to the church and is now under separate ownership from the northerly portion. [¶] In order to allow the decision-makers and other interested parties an opportunity to consider each proposal independently, the Draft EIR has been reprinted to include only those portions applicable to each project. The Final EIR includes all the responses to comments received on the Draft EIR for both projects."

By this stage, Bayside had revised its development plans. The new phasing data described construction of 94,500 square feet of building space and 833 parking spaces in phase 1, and construction of 78,500 square feet of building space and 516 parking spaces in phase 2. The planning commission voted four to three to deny the CUP "based on inconsistency with the Granite Bay Community Plan's policies regarding intensity of use and incompatibility with the adjoining rural residential neighborhood." It took no action to certify the CRE/BCC FEIR.

Bayside appealed the planning commission's adverse decision to the board of supervisors. County noticed the public hearing to be held on November 21, 2000. It described Bayside's project as the "development of a church campus, including six buildings (ultimate capacity for 5,000± persons) to be developed in two phases. **PHASE 1** is proposed to consist of three buildings (94,500± sq. ft.)—a multi-purpose/gymnasium building and two meeting/classroom buildings. **PHASE 2** is proposed to consist of three buildings (78,000± sq. ft.)—an auditorium and two multi-purpose/classroom buildings. Additional facilities include a softball/soccer field, a play area for pre-school children, and 1,550 parking spaces." (Boldface in original.)

During the board of supervisors meeting, Bayside abandoned its two-phase plan to construct 173,000 square feet of church facilities, and sought approval for construction of only three buildings totaling 94,500 square feet. The board certified the Bayside portion of the CRE/BCC FEIR and granted the CUP by a vote of four to one. County filed its notice of determination on November 22, 2000.

Neighbors filed a timely petition for writ of mandate in superior court. They alleged numerous violations of CEQA and local planning and zoning laws, and requested: (1) a peremptory writ of mandate ordering County to vacate its certification of the BCC FEIR, and (2) an order to set aside County's approval of the CUP.

The court denied the requested relief. Among other things, the court rejected the Neighbors' claim County violated CEQA by including two projects in one EIR and certifying the same EIR twice. It found that "[a]lthough the process used . . . seems to be novel, it does not appear to have been either unauthorized or prejudicial to the [Neighbors'] interests. The fact that the Board of Supervisors certified the final EIR with regard to the housing project first did not necessarily bind them to approval of the same EIR with regard to the church property. It appears from the record that the Board of Supervisors understood that they had discretion whether to certify the final EIR with regard [to] the Church project or not, and exercised that discretion."

The Neighbors appealed. We denied their April 2002 request for immediate stay and petition for writ of supersedeas. On September 25, 2002, we denied the Neighbors' renewed petition for writ of supersedeas and motion for immediate stay of construction.

DISCUSSION

I

*Standard of Review*

The general question raised in this appeal is whether County's environmental review of the Bayside project involved a prejudicial abuse of discretion. ■ " 'Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence.' " (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 392, fn. 5 [253 Cal.Rptr. 426, 764 P.2d 278] (*Laurel Heights I*); see §§ 21168, 21168.5.)

Under this standard, " '[t]he court does not pass upon the correctness of the EIR's environmental conclusions, but only upon its sufficiency as an informative document.' [Citation.]" (*Laurel Heights I, supra,* 47 Cal.3d at p. 392.) We apply the same scope and standard of review as the trial court, and its findings are not binding on us. (*Fat v. County of Sacramento* (2002) 97 Cal.App.4th 1270, 1277 [119 Cal.Rptr.2d 402] (*Fat*).)

■ The Neighbors urge us "to set a bright-line rule that the procedural irregularities of the type that occurred in this case are a *per se* violation of CEQA." We decline the invitation. The Legislature's statement of policy under CEQA expressly rejects both the conventional harmless error standard and a per se standard of prejudice. Section 21005 provides: "(a) . . . [N]oncompliance with the information disclosure provisions of this division which precludes relevant information from being presented to the public agency, or noncompliance with substantive requirements of this division, *may* constitute a prejudicial abuse of discretion within the meaning of Sections 21168 and 21168.5, *regardless of whether a different outcome would have resulted if the public agency had complied with those provisions.* [¶] (b) . . . [I]n undertaking judicial review pursuant to Sections 21168 and 21168.5, courts shall continue to follow the established principles that *there is no presumption that error is prejudicial.*" (Italics added.) Whether a procedural violation involves a *prejudicial* abuse of discretion turns on whether the error resulted in the omission of relevant information from the environmental review process—even where the information would not have altered the agency's ultimate decision to approve a project. (*Rural Landowners Assn. v. City Council* (1983) 143 Cal.App.3d 1013, 1020-1021, 1023 [192 Cal.Rptr. 325] (*Rural Landowners*); see also *East Peninsula Ed. Council, Inc. v. Palos Verdes Peninsula Unified School Dist.* (1989) 210 Cal.App.3d 155, 174 [258 Cal.Rptr. 147].)

The California Supreme Court approved this line of reasoning in *Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1236-1237 [32 Cal.Rptr.2d 19, 876 P.2d 505] (*Sierra Club*). In that case, the Department of Fish and Game denied timber harvesting plans submitted by Pacific Lumber Company (Pacific Lumber) after it refused to provide information on old-growth-dependent wildlife species. Pacific Lumber appealed to the Board of Forestry, which approved the plans on the incomplete record. (*Id.* at p. 1219.) The Sierra Club challenged the board's decision. (*Id.* at pp. 1225-1226.) The Supreme Court explained that courts will set aside an agency decision "[o]nly if the manner in which an agency failed to follow the law is shown to be prejudicial, or is presumptively prejudicial, as when the department or the board fails to comply with mandatory procedures, . . ." (*Sierra Club, supra,* at p. 1236.) The court held that prejudice was presumed where

"[t]he absence of any information regarding the presence of the four old-growth-dependent species on the site frustrated the purpose of the public comment provisions of the Forest Practice Act. [Citation.] It also made any meaningful assessment of the potentially significant environment impacts of timber harvesting and the development of site-specific mitigation measure impossible." (*Id.* at pp. 1236-1237.)

In determining whether an agency has complied with CEQA's procedural requirements, courts consider " ' "whether an objective, good faith effort to so comply is demonstrated." ' " (*Fat, supra,* 97 Cal.App.4th at p. 1277.) However, a good faith effort to comply with CEQA will not prevent a finding of prejudicial abuse of discretion where the agency's actions result in the *omission* of relevant information. (*Rural Landowners, supra,* 143 Cal.App.3d at p. 1022.) "While the guidelines allow for flexibility of action within their outlines, they are not to be ignored." (*Ibid.*)

■ We accord more deference to agency decisions on substantive questions, and " 'resolve reasonable doubts in favor of the administrative finding and decision.' " (*Laurel Heights I, supra,* 47 Cal.3d at p. 393.) "Substantial evidence" in the context of CEQA is defined as "enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached." (Guidelines, § 15384, subd. (a).) Thus, "[a] court may not set aside an agency's approval of an EIR on the ground that an opposite conclusion would have been equally or more reasonable. [Citation.] A court's task is not to weigh conflicting evidence and determine who has the better argument when the dispute is whether adverse effects have been mitigated or could be better mitigated. We have neither the resources nor scientific expertise to engage in such analysis, even if the statutorily prescribed standard of review permitted us to do so. Our limited function is consistent with the principle that 'The purpose of CEQA is not to generate paper, but to compel government at all levels to make decisions with environmental consequences in mind.' " (*Laurel Heights, I, supra,* 47 Cal.3d at p. 393.)

■ We review the interpretation and application of CEQA as questions of law. (*Fat, supra,* 97 Cal.App.4th at p. 1277.)

II

*Procedural Requirements of CEQA*

As we explained, the environmental review of the Bayside project involved two combined CRE/BCC DEIR's dated December 3, 1998, and

March 23, 1999, the separate BCC DEIR prepared in September 2000 after Bayside acquired the church property, and the combined CRE/BCC FEIR dated June 6, 2000, certified by the board of supervisors on November 21, 2000.

The Neighbors allege County committed four procedural violations in its environmental review, and argue the process was prejudicial as a matter of law. Specifically, they allege County: (1) reviewed two unrelated projects in the CRE/BCC DEIR; (2) failed to recirculate the BCC DEIR before certifying the CRE/BCC FEIR; (3) failed to certify separate FEIR's for Bayside Covenant Church and Cavitt Ranch Estates, and certified the same FEIR twice; and (4) violated CEQA's notice requirements.

Our task is to determine whether County complied with the requirements of CEQA, and, if not, whether its violations resulted in the omission of relevant information from the environmental review process. (*Sierra Club, supra,* 7 Cal.4th at pp. 1236-1237; *Rural Landowners, supra,* 143 Cal.App.3d at p. 1022.) Having carefully reviewed the record in light of the language of CEQA and the Guidelines, we conclude County's environmental review satisfied the procedural requirements of CEQA. In any event, none of the alleged violations deprived the public or local agencies of information relevant to the Bayside project. Accordingly, there was no abuse of discretion.

A. *Two Projects/One EIR:*

■ Our analysis of the Neighbors' first procedural challenge is limited to the question whether County violated CEQA by including both elements of Elliott's proposed development in one DEIR. We consider separately the propriety of County's actions after Bayside submitted its own project application to the planning department.

Section 21061 states that "[a]n environmental impact report is an informational document which, when its preparation is required . . . , shall be considered by every public agency prior to its approval or disapproval of a project. The purpose of an environmental impact report is to provide public agencies and the public in general with detailed information about the effect which a proposed project is likely to have on the environment; to list ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project."

CEQA defines "project" as "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect

physical change in the environment, and which . . . [¶] . . . [¶] . . . involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (§ 21065, subd. (c); *Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 262 [104 Cal.Rptr. 761, 502 P.2d 1049].) The Guidelines elaborate on this definition of "project," stating it means "the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, . . ." (Guidelines, § 15378, subd. (a).)

The Neighbors argue "[t]he two Projects, Bayside's Church and Cavitt Ranch Estates, cannot fit within the language of 'an activity', because they are not one activity. They are two different activities. Each project required vastly different governmental approvals." Neighbors cite Guidelines section 15161 and *Sierra Club v. County of Sonoma* (1992) 6 Cal.App.4th 1307, 1316 [8 Cal.Rptr.2d 473], which state that project EIR's examine the environmental impact of "a specific development project." They insist that under the " 'plain meaning rule' both CEQA and the CEQA Guidelines should be interpreted so that the term project includes one development activity undertaken by one person." Because the two elements of Elliott's original project were unrelated, the Neighbors say they required separate DEIR's.

The Neighbors do not, however, cite any provisions of CEQA or the Guidelines that prohibit inclusion of two distinct project elements in a single DEIR. Nor do they argue that Bayside Covenant Church and Cavitt Ranch Estates elements had different direct or indirect impacts on the environment. Environmental impact is the fundamental question addressed by an EIR. (§ 21061.) Here, the 174.7-acre residential parcel and the 34.6-acre church parcel were situated along the same stretch of Sierra College Boulevard, separated by only a four-acre parcel. As such, they comprised the whole of Elliott's proposed action at the time he submitted his initial project application. (Guidelines, § 15378, subd. (a).) The EIR focuses on environmental effects, and provides information to "every public agency prior to its approval or disapproval of a project." (§ 21061.) Thus, it is of no consequence that the two parts of Elliott's project sought different approvals and permits from the County. At worst, the inclusion of both elements in a single DEIR resulted in too much information regarding environmental effects, not too little.[2] We therefore conclude County did not violate CEQA in the circumstances of this case.

---

[2]CEQA and the Guidelines encourage agencies to draft environmental documents in clear language and format. (§ 21003, subd. (b); Guidelines, §§ 15006, subds. (q) & (r), 15120, 15140.) One danger in providing too much information is that it will confuse the reader. The

B.-D.* .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III-V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Raye, J., concurred.

---

Neighbors do not argue the public or the agencies were confused by County's inclusion of two elements of Elliott's proposed development project in a single DEIR. Their claims of confusion are directed to the alleged notice violations, and which hearings were to consider the Bayside project.

*See footnote, *ante*, page 1092.